**In re David McLain DUTTENHOFER, Debtor.**

**Susanne TREACHER aka Susanne Duttenhofer, Plaintiff,**

v.

**David McLain DUTTENHOFER, Defendant.**

**Bankruptcy No. SA 80–01846 PE. Adv. No. SA 80–0714.**

United States Bankruptcy Court, C. D. California.

July 31, 1981.

David P. Adalian, Visalia, Cal., for plaintiff.

Thomas A. Lavin, Laguna Beach, Cal., for defendant/debtor.

## MEMORANDUM OF DECISION

PETER M. ELLIOTT, Bankruptcy Judge.

Plaintiff is the former wife of the defendant. She complains that by reason of the fraudulent misrepresentations of the defendant during their marriage, she was induced to join in a sale of community real property and to hypothecate community personal property. She alleges that her then husband, as a fiduciary, was guilty of defalcation or defrauded her of her community share. These allegations, if proven, fall within the ambit of 11 U.S.C. § 523(a)(4).

By pre-trial order signed July 30, 1981, the plaintiff also claims that her community share of the proceeds of a Newport Equity loan are recoverable from defendant under the same theory.

The defendant cannot account for the disposition of a substantial portion of the community funds entrusted to him for investment.

The issue presented is whether the defendant is required to account for plaintiff's share of these community funds.

The defendant is a stockbroker with a college education through the senior year, but without a degree. The plaintiff is a physical therapist with a bachelor's degree in psychology from the University of California at Davis. They were married in 1972.

The parties borrowed a net amount (after fees and costs) of $7,306.13 from Newport Equity Fund, Inc. to be secured by a deed of trust on their home at 23591 Verrazanno Bay, Laguna Niguel, California. The loan escrow closed on January 12, 1977. The loan proceeds were deposited in defendant's separate bank account. A substantial portion of this money was used by the defendant to pay off an encumbrance on the subject property held by the builder. It is not true that the defendant represented to plaintiff that the loan was merely to help out a friend and that no repayment would be required.

The defendant preached the gospel of "leverage" to his wife and persuaded her to agree to a sale of their family residence so that their equity could be invested in the stock market. In agreeing to the sale of the residence, she relied upon his representations that the equity from the house would be invested in the stock market. The property was sold and escrow closed June 28, 1977. $15,000 was disbursed from the escrow to United California Bank, the major portion of which paid the purchase price of a mobile home which was to become the residence of the parties. In addition, the net proceeds of $23,273.95 was disbursed to

the defendant and was deposited in his separate bank account.

The defendant did disburse $6,211.63 for the purchase of stock. There is no credible evidence as to what happened to the other $17,062.32.

After the parties moved into the mobile home, again preaching "leverage", defendant persuaded plaintiff to execute a note for $6,500 secured by a security agreement on the mobile home to invest in the stock market. There is no credible evidence as to what happened to the $6,500.00.

In January of 1978 the plaintiff discovered that defendant, in defendant's own words, was psychologically dependent on cocaine. She separated from defendant and there-after filed a dissolution proceeding on or about June 26, 1978. An interlocutory decree of dissolution was entered on October 12, 1978 and a final decree of dissolution was entered on January 12, 1979. The plaintiff, represented by different counsel in the dissolution proceeding, did tell her then attorney of her feelings that the defendant had dissipated community funds for the purchase of cocaine. There is no evidence that any claim was made against defendant in the dissolution proceeding arising out of the wrongful disposition of community funds and there is no mention of it in the court's interlocutory judgment of dissolution which provides for a division of the property.

Plaintiff did not learn of the facts which give rise to her claim until on or after January 28, 1978. This adversary proceeding was commenced by the filing of a complaint on October 20, 1980. Therefore, this proceeding is not barred by the three year statute of limitations of California Code of Civil Procedure, § 338.4.

I am satisfied that there is no res judicata or collateral estoppel to the judgment in the dissolution proceeding. See 32 Cal. Jur.3d §§ 463 to 468.

Since defendant has not accounted for the disposition of a total of $23,562.32 of community funds, and plaintiff's community share thereof is $12,781.16, defendant is liable to her in that amount and I hold that liability to be nondischargeable.

## DISCUSSION

Whether defendant used cocaine is not really the issue.

11 U.S.C. § 523 provides in part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

California Civil Code § 5103 provides as follows:

Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by Title 8 (commencing with Section 2215) of Part 4 of Division 3.

Section 2215 and the following sections in the Civil Code define the nature and creation of trusts. Section 2228 provides:

*Trustee's obligation to good faith.* In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.

Civil Code Section 2229 provides:

*Trustee not to use property for his own profit.* A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner.

Civil Code Section 2237 provides:

*Measure of liability for breach of trust.* A trustee who uses or disposes of the trust property, contrary to Section 2229, may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it,

with its fruits, or to account for its proceeds, with interest.

In *Ivy v. Plyler* (1966), 246 Cal.App.2d 678, 54 Cal.Rptr. 894 in discussing § 17(a)(4) of the Bankruptcy Act, the predecessor to § 523(a)(4) of the current Code, the court stated

> Although we find no California case defining defalcation, there are a number of definitions from other jurisdictions noted in 163 A.L.R. 1008. Generally speaking, the cases have held that as used in the act, "defalcation" is not a synonym for fraud, embezzlement or misappropriation, but has a broader meaning. Defalcation means "the failure of a fiduciary to account for money received in his fiduciary capacity."

The plaintiff has shown and the defendant admits that he represented to the plaintiff that this money would be invested in the stock market. He has shown that only $6,211.63 of the money was so invested. It is simply not good enough for the defendant to disclaim all knowledge of how the balance of $23,562 was disbursed. He states that he destroyed all of his cancelled checks and check stubs. He does not indicate that he has made any effort to obtain duplicate copies of the checks from the banks. It has been my experience that banks microfilm every customer's check that they process for payment. If these records are not available, defendant should have at least shown that he made an attempt at obtaining them. He thinks that he may have repaid his father a substantial sum. He also claims to have spent up to $6,000 on repairs and remodeling and a substantial sum on automobile repairs. Yet, although this complaint has been pending since October 1980, he has produced no corroboration of these alleged payments. His failure to account is a defalcation which renders the liability non-dischargeable.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum of decision shall constitute my findings of fact and conclusions of law.