In the Matter of John Allen
ENGLAND, Debtor.

SEIBELS, BRUCE & CO., Plaintiff,

v.

John Allen ENGLAND, Defendant.

Bankruptcy No. A85–00045–ADK.
Adv. No. 85–0238A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 15, 1986.

William E. Turnipseed, Atlanta, Ga., for plaintiff.

S. Lee Storesund, Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION AND ORDER

A.D. KAHN, Bankruptcy Judge.

Plaintiff filed the above-styled adversary complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4).

It is before the Court on Plaintiff's Motion for Summary Judgment. The Court finds this matter to constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Court had previously requested additional briefs from the Parties. After considering the same, the Court concludes that Plaintiff's Motion for Summary Judgment should be granted.

Plaintiff's Statement of Material Facts of Which There is No Dispute remains unchallenged by Defendant-Debtor and is quoted in part below.

1.

Movant Seibels, Bruce is a South Carolina corporation qualified to do business in the State of Georgia, the principal place of business of which within that state being at 1957 Lakeside Parkway, Tucker, Georgia 30084.

2.

On January 26, 1981, John Allen England (hereinafter "England") was serving as the President and chief operating officer of Amtrux Insurance Managers, Inc. (hereinafter "Amtrux"), a Georgia corporation incorporated on January 12, 1981....

3.

On January 26, 1981, an "Agency Agreement" was executed by England and Seibels, Bruce wherein Amtrux *inter alia* agreed to remit to Seibels, Bruce net premium monies collected for insurance contracts placed by Amtrux with Seibels, Bruce after Amxtrux [sic] had retained out of said premium monies commissions at rates agreed upon by the two parties....

4.

On January 28, 1981, a written personal Guaranty of the obligations of Amtrux under the Agency Agreement was executed by England....

### 5.

That on the date of execution of the above-noted Agency Agreement and personal Guaranty, England was duly licensed in the State of Georgia to solicit and accept from the public applications for contracts of insurance, and afterwards did, in fact, solicit and accept from the public applications for contracts of insurance which were placed with Seibels, Bruce.

### 6.

Under the terms of the Agency Agreement and his written personal Guaranty, England was liable for the full, prompt and faithful payment performance and discharge by Amtrux of its obligations under the Agency Agreement to include Amtrux's express obligation to remit net premium monies collected by Amtrux from its customer-insureds to Seibels, Bruce.

. . . .

### 8.

On November 5, 1982, England, as President of Amtrux, executed a Promissory Note in favor of Seibels, Bruce obligating Amtrux to pay Seibels, Bruce $575,000.00 over a term of thirteen (13) months . . ., which indebtedness was further personally guaranteed by England in a written Guaranty executed on the same date. . . .

### 9.

That the indebtedness of $575,000.00 owed to Seibels, Bruce from Amtrux and guaranteed by England as reflected in the Promissory Note and written Guaranty described in paragraph 8 above constituted net premium collected yet unremitted by Amtrux to Seibels, Bruce as of November 5, 1982. . . .

### 10.

On April 1, 1983, Seibels, Bruce filed suit against England in the State Court of DeKalb County in Civil Action No. FO4789-2 alleging that Amtrux had breached the terms of both its Agency Agreement and the November 5, 1982 Promissory Note and that England had further breached the terms of his written personal guaranties of the indebtednesses of Amtrux arising under the Agency Agreement and Promissory Note by England's failure to pay said indebtednesses when due to Seibels, Bruce.

. . . .

Plaintiff's Statement of Material Facts of Which There is No Dispute at 1–4.

### 11.

On July 21, 1983, a judgment in damages was entered upon a jury verdict in favor of Seibels, Bruce & Company and against England in the amount of $276,-326.64, together with attorneys' fees in the amount of 15% of the judgment, plus the cost of the action totalling $317,-806.63.

Amendment to Plaintiff's Statement of Material Facts Not in Dispute at 1–2.

Plaintiff contends that Defendant-Debtor, as president, director, and 51% shareholder of Amtrux Insurance Managers, Inc., is liable for a nondischargeable debt for failure to remit net insurance premiums to Plaintiff pursuant to § 523(a)(4). Section 523(a)(4) provides that a debt is nondischargeable if it is one "for fraud or defalcation while acting in a fiduciary capacity . . . ." There is no dispute as to liability. See Judgment of State Court of DeKalb County, Georgia entered July 21, 1983 against Defendant-Debtor and in favor of Plaintiff in the amount of $276,326.64, attached to Plaintiff's Statement of Material Facts of Which There is No Dispute. There is no dispute that there was a fiduciary relationship between Defendant-Debtor and Plaintiff. See this Court's Order entered January 15, 1986.

In support of its contention that the debt in question should be held to be nondischargeable in bankruptcy, Plaintiff relies upon the case of *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121 (6th Cir.1985),

which appears to be on all fours with the case *sub judice*. In *In re Interstate Agency, Inc.*, Lilly was president, major stockholder, and director of Interstate Agency, Inc. Lilly executed an agency agreement with Capitol Indemnity Corp. on behalf of Interstate in his capacity as president. Lilly also signed a personal guarantee. The Sixth Circuit Court of Appeals held that the debt owed to Capitol for the failure of Interstate to remit premiums due was a nondischargeable debt as to Lilly pursuant to § 17(a)(4) of the Bankruptcy Act of 1898.* The Court stated that

It is undisputable that Lilly should be imputed with knowledge and participation in Interstate's breach of fiduciary duty to Capitol. His status as president, large shareholder, and personal signatory to the agency agreement as well as debt contracts stands as overwhelming evidence of his full knowledge and responsibility for the handling of Interstate's trust undertakings.

. . . .

"Defalcation" is defined as encompassing embezzlement, the "misappropriation of trust funds held in any fiduciary capacity," and the "failure to properly account for such funds." Since both Lilly and Interstate clearly failed to account properly for such funds, both are guilty of defalcation under Section 17(a)(4). Such wrong-doing [sic] under Section 17(a)(4) does not have to be intentional. *See, e.g., Carey Lumber Company v. Bell*, 615 F.2d 370 (5th Cir.1980) ("misappropriation" under Section 17(a)(4) does not have to constitute intentional wrong-doing.).

*In re Interstate Agency, Inc.*, 760 F.2d at 125 (footnote omitted).

Cases construing § 523(a)(4) have likewise held that defalcation need not be intentional. *See, e.g., Landvest Assoc. v. Owens (In re Owens)*, 54 B.R. 162 (Bankr. D.S.C.1984); *American Metals Corp. v. Cowley (In re Cowley)*, 35 B.R. 526 (Bankr.

D.Kan.1983); *Baugh v. Matheson (In re Matheson)*, 10 B.R. 652 (Bankr.S.D.Ala. 1981).

In the case *sub judice*, the only evidence before the Court is that premiums which should have been paid over to Plaintiff were not. There is no evidence of where or how the premiums were used. As the Court stated above, it has already been held that, pursuant to O.C.G.A. § 33–23–79(b), Defendant-Debtor owed a fiduciary duty to Plaintiff regarding the premiums collected. Defendant-Debtor has failed to raise any disputed facts which would negate this duty or show that there was no defalcation on his part. He only argues that, because Amtrux Insurance Managers, Inc. had many agents, he is only responsible for the premiums *he* generated. He has offered no evidence that he did not, as president, director, and majority stockholder, have control over the premiums collected by Amtrux. Therefore, this case is indistinguishable from *In re Interstate Agency, Inc.*, and the Court is compelled to find that the debt owed to Plaintiff by Defendant-Debtor is one for defalcation while acting in a fiduciary capacity. Thus, said debt is nondischargeable pursuant to § 523(a)(4). There being no material facts in dispute, the Court will grant Plaintiff's Motion for Summary Judgment pursuant to Bankruptcy Rule 7056.

### ORDER

In accordance with the reasoning above, it is the Order of the Court that Plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED.

An appropriate Judgment is entered contemporaneously herewith.

---

* Section 17(a)(4) of the Bankruptcy Act of 1898 is the predecessor of § 523(a)(4) of the Bankruptcy Code. The difference in the wording of the two sections is of no significance to the instant case. Therefore, *In re Interstate Agency, Inc.*, which construed § 17(a)(4), is instructive in the application of § 523(a)(4).