In re Robert Ellis HUTTON, Debtor.

**PACIFIC–MIDWEST GAS COMPANY,
an Oklahoma corporation, Plaintiff,**

v.

**Robert E. HUTTON, Defendant.**

**Bankruptcy No. 90–00011–C.
Adv. No. 90–0157–C.**

United States Bankruptcy Court,
N.D. Oklahoma.

Aug. 27, 1990.

Neal Tomlins, Tulsa, Okl., for plaintiff.

J. Patrick Mensching, Tulsa, Okl., for defendant.

### MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on to be heard upon the motion of the Debtor, Robert E. Hutton ("Hutton"), to dismiss the complaint of Pacific–Midwest Gas Company, debtor-in-possession, plaintiff ("Pacific–Midwest"), asking that the claim of Pacific–Midwest against Hutton be declared nondischargeable under § 523(a)(4) of the Bankruptcy Code. Said section states as follows:

A discharge under § 1141 of this title does not discharge an individual debtor from any debt ... (4) for fraud or defalcation while acting in a fiduciary capacity.

The basis of Hutton's motion is that he was not acting in a "fiduciary capacity" in regard to Pacific–Midwest as that term is used in § 523(a)(4).

The complaint alleges as follows:

1. That Plaintiff Pacific–Midwest commenced a voluntary bankruptcy case under Chapter 11 on November 20, 1989.

2. That Defendant Hutton commenced a voluntary bankruptcy case under Chapter 11 on January 4, 1990.

3. That at all time Hutton was an officer and member of the Board of Directors of Pacific–Midwest and was acting in a "fiduciary capacity" in regards to Pacific–Midwest.

4. That on June 29, 1988, Pacific–Midwest agreed to purchase 6,250 shares of its own capital stock from third-party stockholders for the sum of $480,000.00.

5. That said sale was completed and constituted an unlawful stock redemption under 18 O.S. § 1041. Said section provides in substance that a corporation cannot purchase its own common stock when its capital is impaired.

6. That at the time of the purchase the capital of Pacific–Midwest was impaired and under 18 O.S. § 1053 a director who authorizes such an unlawful purchase is liable to the corporation and its creditors for the amount paid for the purchase or redemption of the corporation stock.

7. That Hutton as a director of Pacific–Midwest voted as a director to approve the purchase of the stock.

8. That when Hutton voted to approve the purchase by Pacific–Midwest of its own stock for $480,000.00 while its capital was impaired, this amounted to a defalcation while acting in a "fiduciary capacity" and gave rise to a nondischargeable debt from Hutton to Pacific–Midwest for said amount.

The substance of Hutton's motion to dismiss is that he was not acting in a "fiduciary capacity" within the meaning of § 523(a)(4) of the Bankruptcy Code when he voted to approve the purchase by Pacific–Midwest of its own stock and, therefore, Pacific–Midwest has not stated a cause of action.

The issue before the Court on the motion to dismiss is whether a director and officer of a corporation acts, as a result of such relationship, in a "fiduciary capacity", within the meaning of § 523(a)(4) of the Bankruptcy Code.

■ There is no question but that an officer and director of a corporation owe a fiduciary duty to the corporation and its stockholders under the common law. In the case of *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) the court stated:

A director [of a corporation] is a fiduciary. *Twin–Lick Oil Co. v. Marbury*, 91 U.S. 587, 588 [1 Otto 587, 588], 23 L.Ed. 328 (1800). So is a dominant or controlling stockholder or group of stockholders. *Southern Pacific Co. v. Bogert*,

250 U.S. 483, 492 [39 S.Ct. 533, 537, 63 L.Ed. 1099 (1919)]. Their powers are in trust....

See also *Wilshire Oil Co. of Texas v. Riffe*, 381 F.2d 646 (10th Cir.1967); *Palmer v. Stokely*, 255 F.Supp. 674 (W.D.Okla.1966); *McKee v. Interstate Oil & Gas Co.*, 77 Okl. 260, 188 P. 109 (1920).

■ The issue in the present case, however, is whether Hutton as a director and officer of the corporation acted in a "fiduciary capacity" within the meaning of § 523(a)(4) of the Bankruptcy Code when he voted to approve the sale of the stock. *This Court decides that he did not.* The term "fiduciary capacity" under the Bankruptcy Code is much narrower than the term "fiduciary relationship" under state law. Under the Bankruptcy Code a debtor has acted in a "fiduciary capacity" only when his fiduciary duties arise out of an express, technical or statutory trust. *Chapman v. Forsyth*, 43 U.S. 202, 11 L.Ed. 236 (1844); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Twitchell*, 91 B.R. 961 (D.Utah 1988); *In re Romero*, 535 F.2d 618 (10th Cir.1976); *In re Black*, 787 F.2d 503 (10th Cir.1986); *Savonarola v. Beran*, 79 B.R. 493 (Bankr.N.D.Fla.1987); *In re Reder*, 60 B.R. 529 (Bankr.D.Minn.1986); *In re Myers*, 52 B.R. 901 (Bankr.E.D.Va.1985).

In the *Chapman* case, decided in 1844, the United States Supreme Court, held that a factor entrusted with selling cotton for another was not a fiduciary within the meaning of the bankruptcy law. The court discharged the factor's debt which arose from the factor's failure to remit sales proceeds to its principal. The court gave the term "fiduciary capacity" a narrow construction and observed that a debt not covered under the specific exceptions was dischargeable even though the person may be under a fiduciary obligation. The court stated as follows:

[I]t will be difficult to limit its application. [Accordingly, the 1841 Act] must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would

have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied, but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore within the act.

In the *Davis* case decided by the Supreme Court in 1934 some 90 years later, the court cited with approval the *Chapman* case. In *Davis* an automobile dealer had sold automobiles which were under trust receipts in favor of Aetna Acceptance Company and failed to pay the proceeds of the sale to Aetna. Even though the language of the trust receipts imposed a trust on the dealer the court held that there was no "fiduciary capacity" within the meaning of the Bankruptcy Act. The court stated as follows:

> The respondent contends that irrespective of wilfulness or malice, the petitioner is within the exception declared by subdivision 4, his liability arising, it is said, from his fraud or misappropriation while acting in a fiduciary capacity. The meaning of these words has been fixed by judicial construction for very nearly a century. *Chapman v. Forsyth*, 2 How. 202, 11 L. ed. 236, decided in 1844, is a decision to the effect that within the meaning of a like provision in the Act of 1841, a factor does not act in a fiduciary capacity; the statute "speaks of technical trusts, and not those which the law implies from the contract." 2 How. at p. 208. The scope of the exception was to be limited accordingly. Through the intervening years that precept has been applied by this court in varied situations with unbroken continuity. . . .

It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrukpt [sic] has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto.

In the *Romero* case, the Tenth Circuit Court of Appeals stated as follows:

> It is also generally recognized that the exception under § 17(a)(4) applies only to technical trusts and not those which the law implies from a contract. *See* Remington on Bankruptcy, § 3364 and cases cited. Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

In the *Twitchell* case, the United States District Court for the District of Utah in 1988 held expressly that pursuant to the Supreme Court decisions and decisions of the Tenth Circuit cited above, a director or officer did not act in a "fiduciary capacity" in relationship to the corporation within the meaning of § 523(a)(4) of the Bankruptcy Code. In this case, the debtor was president and treasurer of a credit union. The debtor failed to apply the proceeds from the sale of his home to satisfy a loan obligation owed to the credit union, failed to withhold payroll taxes, improperly approved a loan to himself and released a lien of the credit union on his property. The bankruptcy court held that the obligations arose from a defalcation of the debtor while acting in a "fiduciary capacity" and were thus nondischargeable under § 523(a)(4). *See* 72 B.R. 431 (Bkrtcy.D. Utah 1987). The United States District Court reversed. The district judge in a well reasoned decision stated as follows:

> The sole issue on appeal is whether Mr. Twitchell was in a fiduciary capacity, within the meaning of section § 524(a)(4), when the defalcations occurred. . . .

> The cases construe Code section § 523(a)(4) very narrowly so as to not frustrate the fundamental policy of promoting the fresh start of the debtor. *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986). A central purpose of bankruptcy

legislation is to provide the debtor with comprehensive relief from the burden of his debts by discharging him of virtually all of his debts. *In re Cross,* 666 F.2d 873, 879 (5th Cir.1982). Bankruptcy provides debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). To these ends, courts have narrowly construed exceptions to discharge against the creditor and in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)....

The term "fiduciary capacity" as defined by federal law, applies only to technical trusts, express trusts, or statutorily imposed trusts and not to fiduciary relationships which arise from an equitable or implied trust or an agency relationship....

The term "fiduciary capacity" as used in section 523(a)(4) has its origin in the Bankruptcy Act of 1841. This Act provided that "all persons whatsoever, residing in any state, territory, or district of the United States, owing debts which shall not have been created in consequence of the defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity" could, upon compliance with the Act, receive a discharge.... (n. omitted)

This case authority recognizes that the traditional definition of a "fiduciary" is not applicable in defining "fiduciary capacity" under section 523(a)(4). *In re Cairone,* 12 B.R. 60, 62 (Bankr.D.R.I.1981). The Supreme Court favors a narrow construction of the term "fiduciary capacity" and defines the term as meaning arising from an express or technical trust. *Davis,* 293 U.S. at 333, 55 S.Ct. at 153–54....

The fiduciary relationship of Code section 523(a)(4) does not encompass ordinary commercial relationships such as those of a principal/agent or debtor/creditor. *In re Ayers,* 25 B.R. 762, 774 (Bankr.M.D.Tenn.1982)....

The elements for an express trust include (1) sufficient words to create a trust, (2) a clearly defined trust res, and (3) an intent to create. a trust relationship....

Although the bylaws imposed a fiduciary duty upon Mr. Twitchell, as president and treasurer, the bylaws did not expressly create a trust, in any technical sense, of which Mr. Twitchell was responsible for. The bylaws did not contain language expressly creating a trust res or expressing the Credit Union's intent to make Mr. Twitchell a trustee. The resulting obligation cannot be turned into a trust by mere implication from the bylaws or because Mr. Twitchell is chargeable as a trustee *ex maleficio* ....

Applying these rules to the present case it is apparent that there is no express trust between Hutton and Pacific–Midwest. There is no trust agreement, no intent to create a trust relationship, and no trust res. The fiduciary duty that the Debtor owes to the corporation under state law arises out of his capacity as an officer and director of the corporation. However, in order to be acting in a "fiduciary capacity" under the Bankruptcy Code, the fiduciary duties must not rise out of the relationship between the parties but out of an express or statutory trust. Here there is no express trust between the Debtor and the corporation and therefore the Debtor was not acting in a "fiduciary capacity" within the meaning of § 523(a)(4) of the Bankruptcy Code.

This Court construes the term "fiduciary capacity" as used in the Code very narrowly because of the Supreme Court decisions cited above. Congress has amended and passed many bankruptcy laws since these decisions and has never seen fit to broaden the definition of "fiduciary capacity" as set forth in them. This Court will not extend the concept of "fiduciary capacity" to ordinary commercial relationships involving contracts, debtor/creditor relationships or

fiduciary duties arising out of the relationships of the parties.[1]

A debtor can also act in a "fiduciary capacity" if there is a statutorily created trust. This issue was addressed in *Twitchell* and the court stated as follows:

A statutorily imposed trust can place a debtor in a fiduciary capacity. *In re Petersen,* 51 B.R. 486, 488 (Bankr.D.Kan. 1985). To show a fiduciary capacity from a statutorily imposed trust for the purposes of section 523(a)(4), a creditor must point to an express legislative intent to create a trust relationship in the statute. *Matter of Campbell,* 79 B.R. 496, 498 (Bankr.M.D.Fla.1986); *In re Myers,* 52 B.R. 901, 905 (Bankr.E.D.Va. 1985); *In re Petersen,* 51 B.R. at 488. (n. omitted)

Title 7 of the Utah Code generally regulates financial institution pursuant to the Financial Institutions Act of 1981. Chapter 9 of Title 7 specifically regulates credit unions. It is clear from these regulations that the Utah legislature recognized that officers of financial institutions, including credit unions, have fiduciary duties to the institution. *See* Utah Code Ann. §§ 7–1–308 (Supp.1983) and 7–9–49 (Supp.1987). Nevertheless, there are no regulations in Title 7 that express a legislative intent to place a credit union officer as a trustee over funds belonging to the credit union.

In the present case there is no statute in the State of Oklahoma which makes an officer or director of a corporation a trustee over the property of the corporation.

Defalcation is a much broader term than embezzlement or larceny and includes acts done without fraud, dishonesty or evil intent. The general rule is well stated in *In re Cowley,* 35 B.R. 526 (Bkrtcy.D.Kan. 1983) as follows:

It is broader than embezzlement or misappropriation. It can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom. 3 Colliers on Bankruptcy (15th ed.) § 523.14[1][b]. It is the slightest misconduct, and it may not involve misconduct at all. Negligence or ignorance may be defalcation. 1 Norton Bankruptcy Law and Practice ¶ 27.51 (1981), citing *In re Duttenhofer,* 12 B.R. 926, 7 B.C.D. 1187 (Bkrtcy.C.D.Cal.1981) [inability to account for trust funds]; *In re Matheson,* 10 B.R. 652, 7 B.C.D. 643 (Bkrtcy.S.D.Ala.1981) [unintentional misuse of trust fund].…

See also *In re Fontenot,* 89 B.R. 575 (Bkrtcy.W.D.La.1988) and *In re Johnson,* 691 F.2d 249 (6th Cir.1982).

Since one of the purposes of the Bankruptcy Code is to give the honest debtor a fresh start in life, this purpose would be thwarted if the term "fiduciary capacity" were given a broad meaning. If "fiduciary capacity" were broadly interpreted many debtors who owe fiduciary duties under state law would be denied a discharge of their debts even though they were completely honest but had in some way breached a fiduciary duty through inadvertence, negligence, or lack of knowledge of the law.

The United States Supreme Court has many times discussed and strongly supported the fresh start purpose of the Bankruptcy Code. One of the best discussions is contained in the case of *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). In this case the court stated:

One of the primary purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start

---

1. This Court is aware that the District Court decision in *In re Twitchell* was reversed by the United States Court of Appeals for the Tenth Circuit. The Court of Appeals found that the bylaws of the corporation created an express trust. There are no such bylaws in the present case. Also the Court of Appeals in a footnote provided as follows:

This order and judgment has no precedential value and shall not be cited, or used

by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.

This Court therefore feels the legal analysis contained in the District Court's opinion in *Twitchell* to be persuasive.

afresh free from the obligations and responsibilities consequent upon business misfortunes." ... This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns *at the time of bankruptcy,* a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.... The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act....

When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either. The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great. The new opportunity in life and the clear field for future effort, which it is the purpose of the bankruptcy act to afford the emancipated debtor, would be of little value to the wage earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy....

The Local Loan case dealt with the validity of a wage assignment on post-petition earnings of the debtor. However, its language is applicable to the present case. If debtors are to be burdened with nondischargeable debts because of innocent defalcations while acting in a "fiduciary capacity" under state law where there is no express trust, then the fresh start purposes of the Bankruptcy Code would be severely restricted and in many cases rendered a nullity for any debtor that has been engaged in business. In the present case for instance, there are no allegations that the Debtor knowingly violated state law when he voted to repurchase the corporate stock and no allegations that he personally benefited from the transaction. There are no allegations that he acted with any unlawful or fraudulent intent but merely, that in voting for the repurchase, he violated state law. If he were to be denied a discharge in the amount the corporation spent in the repurchase of the stock ($480,000.00), his right to a fresh start would vanish even though he is an honest debtor. This result should not be countenanced by the courts.

For the reasons stated above the Court will enter an order dismissing the complaint of Pacific–Midwest insofar as it objects to the dischargeability of its claim against Hutton based upon § 523(a)(4) of the Code.[2]

---

**2.** This Court is aware of the decision in *In re Snyder,* 101 B.R. 822 (Bankr.D.Mass.1989). This decision contains an excellent discussion of the issues and comes to the opposite conclusion. In Snyder and in the other cases holding that officers and directors of a corporation acted in a fiduciary capacity within the meaning of § 523(a)(4), the debtors had all personally benefited at the expense of the corporation. This element is not present in the instant case. The debts in question in Snyder and the cases cited therein could have all been held nondischargeable either as an embezzlement under § 523(a)(4) or as a willful and malicious injury to the property of another under § 523(a)(6). There was no need to expand the meaning of "fiduciary capacity" to declare the debts nondischargeable.