In re Wesley R. McKINNEY, Debtor.

R. Dobie LANGENKAMP, Successor Trustee, Plaintiff,

v.

Wesley R. McKINNEY, Defendant.

Bankruptcy No. 85–00042–W.
Adv. No. 86–0165–W.

United States Bankruptcy Court,
N.D. Oklahoma.

March 16, 1993.

Sam Bratton, II, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, OK, for plaintiff.

Gerald G. Stamper, Tulsa, OK, for defendant.

## ORDER DENYING "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"

MICKEY D. WILSON, Bankruptcy Judge.

Defendant has filed his "... Motion for Summary Judgment," "Brief in Support ..." thereof, and "Appendix ..." thereto. No response has yet been filed by the plaintiff. Upon consideration thereof, and of the record herein and in related proceedings as specified below, the Court determines, concludes, and orders as follows.

The original plaintiff was the Trustee, and the present plaintiff is the successor Trustee ("the Trustee"), in two Chapter 11 cases pending before this Court, Case No. 84–01460–W In re Republic Financial Corporation ("RFC") and Case No. 84–01461–W In re Republic Trust & Savings Company ("RTC"). RFC and RTC were depositary institutions comparable to banks but not regulated or insured by FDIC—so-called "thrifts" or "non-bank banks." The bankruptcy of these institutions has had especially unfortunate effects, resembling those of the collapse of an uninsured bank. Defendant Wesley R. McKinney ("McKinney") was the principal of both RFC and RTC, as well as several other companies, most or all of which have suffered financial collapse. For an overview of the decline and fall of "McKinney's empire," see *In re Republic Financial Corp.*, 128 B.R. 793, 794–796 (B.C., N.D.Okl.1991). For present purposes, it suffices to note that

Although [McKinney's various] entities were ostensibly separate, and in many cases conducted different businesses, they dealt with McKinney and with each other and were interrelated in various complex and obscure ways ... RFC and RTS involved thousands of creditors, many of them innocent parties who had never before seen the inside of a courtroom and whose life savings were threatened by the debtor companies' financial difficulties ... McKinney was eventually convicted on criminal charges (though for acts only incidentally related to the financial demise of the entities in bankruptcy); and the Trustee's investigation of the history of RFC and RTS uncovered substantial evidence of pre-bankruptcy mismanagement and finagling,

*id.* McKinney himself was placed in involuntary bankruptcy, commencing the above-styled Chapter 7 case. In his individual bankruptcy case, McKinney has received a discharge under 11 U.S.C. §§ 524, 727.

In this adversary proceeding, all these threads come together. The Trustee of RFC and RTC, on behalf of the depositors in those institutions, sues McKinney in his individual bankruptcy case. The Trustee alleges that McKinney defrauded RFC and RTS of some $3 million. The Trustee asserts that McKinney owes RFC and RTS that sum of money; that as officer and principal of RFC and RTS, he owed such business entities a fiduciary duty; that his acts of fraud "were all in violation of the fiduciary duty owed by McKinney to" RFC and RTS, complaint p. 5; and that his $3 million debt to RFC and RTS for fraud is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). That statute provides in pertinent part that "A discharge under [§] 727 ... does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity ..."

McKinney now moves for "summary judgment in his favor ... dismissing [the Trustee's] claims with prejudice," motion p. 1.

Summary judgment means judgment without trial. It is granted only when trial is unnecessary—i.e., where it clearly appears that there are no disputed facts which must be determined at trial and that, given such undisputed facts, judgment must be granted for the movant and against the other party as a matter of law, F.R.B.P. 7056 adopting F.R.Civ.P. 56(c). Such motions are not readily granted, *In re Curtis*, 38 B.R. 364, 366–368 (B.C., N.D.Okl.1983).

■ Here, the Trustee has not yet responded to McKinney's motion for summary judgment. But this Court will not grant a motion for summary judgment merely in default of a response; such a motion must be granted on its own merits, *In re Culp*, 140 B.R. 1005, 1008 (B.C., N.D.Okl.1992), *In re Fitzgerald, De Arman & Roberts, Inc.*, 129 B.R. 652, 657 (B.C., N.D.Okl.1991), *In re Curtis*, 38 B.R. p. 367.

McKinney's motion for summary judgment is based on a single point of law. According to McKinney,

McKinney's fiduciary capacity with respect to RFC and RTS arose out of McKinney's status as chairman of the board and chief executive officer of RTS and RFC ... [The Trustee has] acknowledged that no other bases exist for McKinney's fiduciary capacity with respect to RTS and RFC ...

Under Oklahoma common law, there is no question that McKinney, as chairman of the board and chief executive officer of RTs and RFC, owed a fiduciary duty to RTS and RFC. However, under [F]ederal law ... McKinney clearly was not "acting in a fiduciary capacity" within the meaning of § 523(a)(4) [because] McKinney was not a trustee of a technical trust ...,

McKinney's brief pp. 2, 9.

McKinney's motion attacks only the Trustee's assertion of "fiduciary capacity" under Federal bankruptcy law. Therefore, for present purposes, the Court takes the rest of the Trustee's allegations as true.

■ The bankruptcy discharge is an injunction, 11 U.S.C. § 524. An injunction is an equitable remedy, which should be applied in an equitable manner, *In re Szafranski*, 147 B.R. 976, 980–981 (B.C., N.D.Okl.1992). Bankruptcy is a specialized, some would say peculiar, form of equity. But nothing in bankruptcy policy calls for the protection of fraud. Bankruptcy law provides

... "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt[,]" [but] limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor,"

*Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764–765 (1991) quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934). In this Court's words,

... [T]he Bankruptcy Court is not a forum for excusing misconduct. And there is no discharge for discharge's sake in bankruptcy. Discharge is a means to achieve the legitimate purpose of providing *honest* debtors with a *deserved* "fresh start." This is no reason to provide dishonest and vicious debtors with a ready escape from their deserved punishment,

*In re Manley*, 135 B.R. 137, 147 (B.C., N.D.Okl.1992) (emphasis original). "Statutory exceptions to discharge should be construed and applied" accordingly—so as to provide "an effective fresh start, but only for deserving debtors," *In re Turner*, 134 B.R. 646, 659 (B.C., N.D.Okl.1991).

■ As a general rule, bankruptcy does discharge debts which are of an ordinary commercial character or which result from ordinary inadvertence or negligence. An exception to discharge for debts incurred by misconduct "in a fiduciary capacity" has long been part of bankruptcy law; and for the last century and a half, the United States Supreme Court has attempted to

"limit its application" so as not to include within the exception "almost all the commercial transactions of the country" and "le[ave] but few debts on which the [discharge] could operate," *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236, 238 (1844). At first, the Supreme Court attempted to define "fiduciary capacity" in terms of "technical trusts," *id.*, which probably meant "express" or "voluntary" trusts, *In re Turner*, 134 B.R. pp. 650–651. Later, the Supreme Court defined "fiduciary capacity" in terms of trust relationships existing before the wrong was committed or the debt incurred, *Upshur v. Briscoe*, 138 U.S. 365, 377–378, 11 S.Ct. 313, 317–318, 34 L.Ed. 931, 935–936 (1891), *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393, 397–398 (1934), which ruled out "remedial devices imposed on a situation after default had occurred" such as constructive trusts, *In re Turner*, 134 B.R. pp. 652–654. Lower courts applied these precedents to evolving legal forms, such as resulting or statutory trusts which were not voluntary but were imposed by law on situations or relationships existing before any wrong was committed, *In re Turner*, 134 B.R. pp. 654–656. This Court has summarized these complex developments as follows:

> The last Supreme Court pronouncement on the subject, *Davis v. Aetna Acceptance Co.*, appears to hold that "fiduciary capacity" means *either* a "technical," presumably "express" or voluntary trust, *or* a fiduciary relationship, voluntary or involuntary, which exists before any wrongdoing ... [Lesser authorities] hold that a "fiduciary capacity" arises "whenever the property of one person is placed in charge of another ... to be used for a specific purpose," and can be implied or imposed by law in some (though not all) business relationships ... [A] fiduciary capacity may be imposed by statute as well as by case law, "independent of any express understanding" among the parties, at least where "a comprehensive scheme ... clearly imposes a ... duty upon [those] who have been advanced money ... prior to any deal-

ings ... with [any particular customer] ...,"

*In re Turner*, 134 B.R. p. 656 (emphasis original).

■ McKinney argues that his officership in RFC and RTS was not a "technical," "express" trust, citing *In re Hutton*, 117 B.R. 1009 (B.C., N.D.Okl.1990), which in turn followed *In re Twitchell*, 72 B.R. 431 (B.C., D.Utah 1987). But *In re Twitchell* had been reversed by unpublished opinion, see *In re Hutton*, 117 B.R. p. 1013 n. 1. Moreover, *Twitchell* and *Hutton* do not comport with the U.S. Supreme Court's later decision in *Grogan v. Garner*, supra: they construe the term "fiduciary capacity" with such extreme narrowness that they exceed the purpose of protecting only those debtors who are "honest but unfortunate." This purpose is best served by taking a narrow view of "fraud or defalcation," not of "fiduciary capacity," *In re Turner*, 134 B.R. p. 659. *Hutton* refuses to "extend the concept of 'fiduciary capacity'" to *any* "fiduciary duties arising out of the relationships of the parties," 117 B.R. p. 1013. But other authorities indicate that "fiduciary capacity" can include certain "trusts" arising from status or relationship among parties, including corporate officership—e.g. *In re Romero*, 535 F.2d 618, 621–622 (10th Cir.1976), finding a fiduciary capacity derived from status and statute, "independent of any express understanding [among the parties];" *In re Black*, 787 F.2d 503, 506 (10th Circ.1986), opining that, for purposes of § 523(a)(4), "a corporate officer owes a fiduciary duty to the corporation and its officers," although "this duty is owed to the shareholders *collectively*, and no fiduciary duty is owed to the stockholders individually" (emphasis original); *In re Snyder*, 101 B.R. 822, 831–835 (B.C., D.Mass.1989), citing numerous cases, aff'd in pertinent part and rev'd in part on other grounds at 923 F.2d 840 (1st Cir.1990). Insofar as *In re Hutton* holds that a corporate officer is *never* in a "fiduciary capacity" with respect to his corporation, that case goes too far, and this Court declines to follow it so far.

948

■ Here, McKinney concedes that, "as chairman of the board and chief executive officer of RTS and RFC, [he] owed a fiduciary duty to RTS and RFC," which said duty derives from his "status as chairman of the board and chief executive officer." This duty existed from the moment he took office, before any particular dealings of McKinney with his companies, of his companies with each other, or of customers with any of his companies, and before McKinney committed the alleged fraud. Such a "fiduciary duty" appears capable of rising to the dignity of a "fiduciary capacity" under 11 U.S.C. § 523(a)(4).

The Court does not say that such a "fiduciary duty" definitely is a "fiduciary capacity" under § 523(a)(4). Nor does the Court say that McKinney is guilty of "fraud," or even of "defalcation," under § 523(a)(4). The Trustee has so alleged, but he has yet to prove his allegations. The Court does say that there is sufficient reason to let the Trustee try to make his proof at trial. McKinney has failed to convince the Court that judgment must be granted in his favor and against the Trustee as a matter of law.

Accordingly, "Defendant's Motion for Summary Judgment" must be, and the same is hereby, denied.

AND IT IS SO ORDERED.