**In re Marc LEVENTHAL, Debtor.**

**COLONIAL NATIONAL BANK USA, Plaintiff,**

v.

**Marc LEVENTHAL, Defendant.**

Bankruptcy No. 94 B 22218 (ASH).
Adv. No. 95–5067A.

United States Bankruptcy Court,
S.D. New York.

March 25, 1996.

---

Seth J. Farber, Robert Barsch, by Seth J. Farber, New York City, for Debtor.

Sharinn & Lipshie, P.C. by Ronald Lipshie, Garden City, NY, for plaintiff.

### DECISION DENYING MOTION TO DISMISS

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Defendant has moved to dismiss the amended complaint with prejudice in this adversary proceeding commenced to determine the dischargeability of defendant's credit card indebtedness to plaintiff under 11 U.S.C. § 523(a)(2)(A). This Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 1334 and 157(a) and (b).

The amended complaint alleges that on unspecified dates prior to filing his Chapter 7 petition in this case defendant incurred charges on a credit card issued by plaintiff aggregating approximately $29,000. It is alleged that these charges were incurred at a time when defendant owed six other creditors some $50,000, including three debts totalling almost $40,000 which had been outstanding since 1992. It is further alleged that at the time of the section 341 meeting defendant had not been employed for eighteen months and had not been employed at the time he obtained credit from plaintiff. Plaintiff alleges reliance upon defendant's "implied representations that the charges would be paid when due" and that, "[s]ince the defendant knew or should have known that he could not possibly pay for the charges the defendant perpetrated a fraud on the plaintiff as such representations were false." Plaintiff asserts that "given the timing of the charges, the amount of charges made and the lack of ability to pay at the

time when the charges were made, defendant intended to deceive or defraud plaintiff when such credit was obtained" and that discharge should be denied under section 523(a)(2)(A).

Section 523(a)(2)(A) states in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

There are numerous, and to a degree conflicting, decisions interpreting section 523(a)(2)(A) in the context of credit card debts and other obligations arising out of varying forms of alleged fraud and deceit. Not controversial is the proposition that the proponent of a claim under section 523(a) must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 290–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *In re Carrier*, 181 B.R. 742, 746 (Bankr.S.D.N.Y.1995); *New York v. Sokol (In re Sokol)*, 170 B.R. 556, 560 (Bankr. S.D.N.Y.1994), *aff'd*, 181 B.R. 27, 28–29 (S.D.N.Y.1995). Consistent with the "fresh start" objective of the Bankruptcy Code, many cases have stated that exceptions to discharge must be literally and strictly construed against the creditor and liberally in favor of the debtor. *In re Carrier*, 181 B.R. at 746; *Community Mutual Savings Bank v. Landrin (In re Landrin)*, 173 B.R. 307, 310 (Bankr.S.D.N.Y.1994); *First American Bank v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 27 (Bankr.E.D.N.Y.1994); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 481 (Bankr. S.D.N.Y.1987). Balancing this approach, other courts have observed that the purpose of the Bankruptcy Code is not to afford a fresh start to any and every debtor, but only to "the honest but unfortunate debtor", *In re Peterson*, 182 B.R. 877 (Bankr.N.D.Okla. 1995); *Grogan v. Garner*, 498 U.S. at 286–87, 111 S.Ct. at 659–60; *In re Manley*, 135 B.R.

137, 147 (Bankr.N.D.Okla.1992); *In re Turner*, 134 B.R. 646, 659 (Bankr., N.D.Okla. 1991), and that equal deference must be paid to the statutory policy embodied in section 523(a) of denying a discharge to dishonest and undeserving debtors, *In re Peterson*, 182 B.R. at 879; *In re McKinney*, 151 B.R. 944, 946 (Bankr.N.D.Okla.1993).

One respect in which courts have differed in articulation, although perhaps not in practical application, is on the question whether a party proceeding under section 523(a)(2)(A) must establish the classic five elements of fraud, namely (1) a representation, (2) falsity, (3) scienter, (4) reasonable or justifiable reliance, and (5) damage. *Compare In re Carrier*, 181 B.R. at 746; *Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 911, 914 (Bankr. E.D.N.Y.1987), *aff'd*, 86 B.R. 21 (E.D.N.Y.), *aff'd without op.*, 862 F.2d 304 (2d Cir.1988), with *In re Shanahan*, 151 B.R. 44, 46, 47–48 (Bankr.W.D.N.Y.1993) ("this Court finds that deciding whether credit card use was fraudulent does not require resort to the so-called 'traditional five elements of fraud,' for the term 'fraud' has broader meaning"). I am inclined to agree with the analysis of Chief Judge Michael J. Kaplan in *In re Shanahan.* Section 523(a)(2)(A) speaks of "false pretenses, a false representation, or actual fraud", evidencing a statutory distinction among the three. The Supreme Court in *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 321, 98 L.Ed.2d 275, 284 (1987), in the context of criminal mail fraud, has observed that "the words 'to defraud' ... have the 'common understanding' of 'wronging one in his property rights by dishonest methods or schemes' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" As stated in *In re Shanahan*, 151 B.R. at 46:

This Court finds that some fraudulent acts—some tricks, deceptive devices or artifices—do not involve "reliance" upon a "representation." Some artifices or pretenses or devices are frauds even if there is no real "representation" (but merely an action or impetus) and no real "reliance" (but merely an anticipated response or consequence).

Slavish adherence to the "five elements of fraud" ... was not required at common law, for it was long recognized that fraud was far broader in concept.

Several decisions have identified three predominant analytical approaches taken by the courts:

(1) The assumption of risk doctrine, which holds that unless a credit card company has revoked the card, it assumes the risk that debtors who do not have the ability to pay will use the card. Only those charges made after the card has been revoked will be declared non-dischargeable. *See First National Bank of Mobile v. Roddenberry,* 701 F.2d 927, 933 (11th Cir.1983); *In re Carpenter,* 53 B.R. 724 (Bankr.N.D.Ga.1985).

(2) The implied representation theory, followed by a majority of courts, which holds that each time a debtor uses a credit card the debtor impliedly represents that he or she has the intention and, some but not all courts hold, the ability to repay the charges incurred. *In re Carrier,* 181 B.R. at 747; *FCC National Bank v. Sharp (In re Sharp),* 144 B.R. 372, 374 (Bankr.S.D.Ohio 1992); *The May Co. v. Chech (In re Chech),* 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988); *Norwest Bank Des Moines, N.A. Card Services Division v. Stewart (In re Stewart),* 91 B.R. 489, 494 (Bankr. S.D.Iowa 1988); *In re Buford,* 25 B.R. 477, 481 (Bankr.S.D.N.Y.1982). For the view that there can be no implied representation with regard to the debtor's ability to pay, *see Chase Manhattan Bank v. Murphy (In re Murphy),* 190 B.R. 327, 332 (Bankr.N.D.Ill.1995) ("One of the principal reasons people rely on credit is a present lack of ability to pay"); *In re Orndorff,* 162 B.R. 886, 888 (Bankr.N.D.Okla.1994); *In re Blackburn,* 68 B.R. 870, 877 (Bankr.N.D.Ind. 1987). Consistent with the implied representation entailed in use of a credit card, "the issuer's extension of credit constitutes both actual reliance and damages. Hence, in most credit card cases ... the issuer easily demonstrates the elements of representation, actual reli-

ance and damage." *In re Carrier,* 181 B.R. at 747. For an analysis rejecting the implied representation theory, *see The GM Card v. Cox (In re Cox),* 182 B.R. 626, 627 (Bankr.D.Mass.1995) ("the statute [section 523(a)(2)(A)] does not apply to misrepresentation of intent to pay when both the representation and lack of intent must be inferred from the circumstances").

(3) As an alternative to the implied representation theory, or to supplement that approach, some courts look to the "totality of the circumstances" and consider twelve or more factors in determining whether the defendant was guilty of false pretenses or fraud in using a credit card or obtaining credit. *See, e.g., In re Dougherty,* 84 B.R. 653, 657 (9th Cir. BAP 1988); *In re Carrier,* 181 B.R. at 747–48. Factors cited by these and other cases are the following:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*See generally In re Orndorff,* 162 B.R. at 888–89; *In re Cox, supra* at 633–34; *In re Murphy, supra* at 333–34.

■ Lacking contrary direction from the Court of Appeals for the Second Circuit or the Southern District of New York, this Court will follow the reasoning of Chief Judge Kaplan in *In re Shanahan* and reject the "assumption of risk" theory insofar as that theory may be invoked to defeat a claim of nondischargeability under section 523(a)(2)(A) in circumstances where a defendant obtained property or credit by means which can fairly be characterized as deceitful or fraudulent. As stated in that case:

> While there is some analytic appeal to the conclusion that the card issuer has assumed the risk that the card would be used in this manner [footnote omitted] this Court cannot agree that actual fraud is something of which one assumes the risk. The issuer of a credit card or credit line perhaps assumes the risk of the user's ignorance, mistake, naivete, gullibility, misfortune, accident, or other innocent failing or adversity, but the Court declines to apply assumption of risk theory to the user's knowing and intentional use of the card to obtain goods without any realistic prospect of having the wherewithal to pay.

151 B.R. at 47.

The implied representation of intent to pay is generally speaking an appropriate tool of analysis in a section 523(a)(2)(A) proceeding in that, in most cases, it is fair and within the scope of reasonable expectation to hold that use of a credit card should be deemed a representation by the user of an intent to pay the charges incurred in accordance with the credit card agreement. "Any credit card transaction involves a promise to pay. A credit card transaction is no different merely because the party extending the credit is not present to receive the promise." *In re Murphy*, 190 B.R. at 332. Disagreeing with *In re Cox*, the Court in *In re Murphy* said (*id.* at ftn. 6):

> A person obtains goods or services in the present with a charge card by promising to pay for such goods or services in the future. That constitutes a representation of intent to perform an act in the future.

That is a representation that may be actionable provided the other elements of fraud are proven (intent, reliance and damages).

But circumstances may exist which would conflict with the implied representation, as in the case of a mentally impaired debtor, posited in the *Shanahan* opinion, who was issued an unsolicited credit card and was proven at trial to lack the mental aptitude to know that she had to pay for merchandise charged on the card. The same may be said for the corollary implications that "the issuer's extension of credit constitutes both actual reliance and damages." Common experience comports with these implications, but in particular cases they may not be supported by the facts.

■ The statutory language of section 523(a)(2)(A)—"false pretenses, a false representation, or actual fraud"—focuses on the conduct of the debtor and the debtor's state of mind. The "totality of the circumstances" approach is best suited to this inquiry, recognizing that the twelve factors often listed in the cases are only examples of facts which may, or may not, control the outcome. This Court agrees with the decisions which conclude that it is neither factually nor legally appropriate to imply or infer a representation of ability to repay. But the debtor's ability or perceived ability to repay at the time he or she incurs indebtedness certainly may be circumstantial evidence bearing on the debtor's intent. *See, In re Murphy*, 190 B.R. at 332 ftn. 6 (ability to pay is "one factor to be considered in determining whether the debtor intended to repay", although "[A]lone, financial inability to repay does not establish fraudulent intent").

■ The defendant in a section 523(a)(2)(A) case generally will earnestly insist that he or she truly intended in good faith to repay the obligation, notwithstanding his/her financial exigencies. The issue then arises whether the case is to be determined by objective criteria on a reasonable man standard irrespective of the debtor's actual state of mind, or entirely on a subjective

assessment of the debtor's credibility. Once again the analysis in *In re Shanahan* is instructive and suggests that the standard is neither entirely subjective nor purely objective, as in the case of a reasonable man test: the actual state of mind of the defendant is determinative, but this is to be judged in light of the objective facts. The most devout and otherwise credible profession of good faith and intent to repay may be overcome by compelling objective evidence.

> The burden is on the creditor to prove fraud—to prove that the debtor knew full well that any professed intention to repay was false or was known by the debtor not to be well-grounded, and that he or she nonetheless deliberately used the card to obtain goods he or she knew were beyond his or her ability to pay.

> If the creditor can make such a showing, then a professed intention to repay on the part of the user—even highly positive hopes and plans to repay—might not purge an otherwise sophisticated cardholder's actions of fraud. Stated otherwise, the fact that one has profoundly fooled oneself[1] with regard to the prospects for the future should not mean that any consequent damage to others was merely inadvertent and not fraudulent.

*In re Shanahan,* 151 B.R. at 47. *See also In re Berz,* 173 B.R. 159, 163 (Bankr.N.D.Ill. 1994). The debtor's actual state of mind must be determined by the trial court on a case-by-case basis weighing the credibility of the witnesses in light of all of the competent evidence introduced at trial. This Court agrees with the approach articulated in *In re Murphy:*

> Finding whether the Debtor had that intent [to defraud] requires a consideration of all the circumstances. The subsequent failure to perform is alone clearly insufficient to prove there was no intent to perform when the statement was made. . . .

Courts often recite lists of factors they supposedly look for when searching for intent to deceive. [footnote omitted] . . .

> This factor-counting exercise turns the job of fact-finding on its head. What courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent. This determination will require a review of the circumstances of the case at hand, but not a comparison · with circumstances (a/k/a "factors") of other cases. Obviously, it is instructive to know how other courts weighed and interpreted circumstances that are similar to those of the present case; that knowledge may even influence how the case under consideration is decided. But the fact-finding process is only clouded by copying a list of factors from other cases and weighing evidence according to how well it matches that list.

190 B.R. at 333–34.[2]

▇ Applying these standards to the amended complaint, the motion to dismiss must be denied. The Court is required to accept the facts pleaded as true and to draw all reasonable inferences in favor of the plaintiff on a motion to dismiss. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974) ("it is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989) ("on a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader"); *Red Ball Interior Demolition Corp. v. Palmadessa,* 908 F.Supp. 1226, 1237 (S.D.N.Y. 1995); ("on a Rule 12(b)(6) motion to dismiss the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor

---

1. This might have been better phrased: "the fact that one *claims to have* profoundly fooled oneself".

2. In quoting with approval from *In re Murphy,* this Court expresses no view as to the result reached by the trial court in that case on the facts there presented, or on the comments made at 190 B.R. at 334 ftn. 9.

**32**

and against the defendants") *see also H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) ("we may only affirm the dismissal of the complaint if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' "); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1987) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985).

■ The amended complaint alleges that defendant incurred almost $30,000 worth of charges on plaintiff's credit card at a time when he had been unemployed for some months and owed six other creditors over $50,000, almost $40,000 of which had been outstanding since 1992. These facts, if proved at trial, may substantiate the conclusory allegation of the amended complaint that since defendant "knew or should have known that he could not possibly pay for the charges the defendant perpetrated a fraud on the plaintiff". Of course, upon the totality of the facts and circumstances proved at trial it may be that the plaintiff will not sustain its burden of demonstrating "fraud" within the meaning of section 523(a)(2)(A) by a preponderance of the evidence. But for pleading purposes the amended complaint is sufficient to state a valid claim under the statute.

The Court will enter an order consistent with the foregoing.