In re Lyndell D. JACOBS, Patricia A. Jacobs, Debtors.

HOUSEHOLD CREDIT SERVICES, INC., Plaintiff,

v.

Lyndell D. JACOBS, Patricia A. Jacobs, Defendants.

Bankruptcy No. 94–32449–RKR. Adv. No. 95–3012.

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

May 20, 1996.

Robert S. Cooper, Rochester, New York, Thomas M. Walz, Bend, Indiana, for Household Credit Services, Inc.

## DECISION and ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

At South Bend, Indiana, on

This matter is before the court on a COMPLAINT FOR EXCEPTION TO DISCHARGE under 11 U.S.C. § 523(a)(2)(A) ("Complaint"). The Complaint was filed on February 21, 1995, by Household Credit Services ("HCS"), a creditor of the bankruptcy estate of Lyndell D. Jacobs and Patricia A. Jacobs ("Jacobs"), Debtors herein. A hearing was held on March 6, 1996, after which the court took the matter under advisement.

### Jurisdiction

This order shall represent findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable herein by Federal Rule of Bankruptcy Procedure 7052. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1).

### Background

The Jacobs acquired an HCS credit card account in May of 1994 with an initial balance of zero, and a credit limit of $5,000. Between May 7, 1994, and July 17, 1994, the Jacobs took six cash advances totaling $3,870.94 and made purchases totaling $876.52, including cash advances for gambling, airline tickets, and hotel accommodations for a total of $4,747.46. Plaintiff's Exh. 1.

On September 4, 1994 and October 27, 1994, the Jacobs took two additional cash advances totaling $1,217.99, increasing their account balance to $6,019.28. Plaintiff's Exh. 1. Between May 7, 1994 and November 13, 1994, the Jacobs made four payments totaling $381 towards the above-mentioned cash advances and purchases. *Id.* On November 22, 1994, twenty-six days after the last cash advance on the account, the Jacobs filed their petition for relief under Chapter 7 of the United States Bankruptcy Code.

On February 15, 1995, HCS filed its Complaint, requesting that the Jacobs' debt to the creditor in the amount of $6,126.35 be excepted from discharge. On March 27, 1995, the Jacobs filed an answer and counterclaim to HCS' Complaint. In their answer, the Jacobs admitted making the cash advances and purchases referred to in the above paragraphs, but denied that they obtained the money from HCS by false pretenses, false representation, or actual fraud. Further, the Jacobs asserted that their indebtedness to

HCS should be discharged, and counter-claimed for the reasonable attorney fees and costs incurred for the defense of HCS' Complaint.

In its scheduling order of April 12, 1995, the court required that all discovery in this matter be completed by June 12, 1995; and, that parties file a joint proposed pre-trial order by July 11, 1995. Parties having failed to comply with the scheduling order, the court entered an order on July 17, 1995, directing HCS to show cause why their complaint should not be dismissed for failure to prosecute. In response to the court's show cause order, HCS filed an affidavit on July 21, 1995, stating that the Jacobs' attorney was no longer authorized to act on their behalf[1], and that neither the Jacobs' attorney, nor HCS had been able to contact the Jacobs regarding HCS' Complaint. The court, subsequently, scheduled a trial on HCS' Complaint for January 8, 1996. Upon request by counsel for HCS, the trial was later continued until March 5, 1996.

The Jacobs failed to appear at the hearing held on March 5, 1996. At the hearing HCS offered into evidence copies of the Jacobs' credit card bills, a copy of their chapter 7 petition for relief, and a copy of request for admissions which had been served on the Jacobs on January 8, 1996. Plaintiff's Exhs. 1–3. After the hearing the court took the matter under advisement.

### Discussion

1. *Effect of Failure to Respond to A Request for Admissions.*

■ Requests for Admission are governed by Federal Rule of Bankruptcy Procedure 7036 which states in pertinent part:

Rule 36 F.R.Civ.P. applies in adversary proceedings.

Rule 36. Requests for Admission

(a) Request for Admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any

matters within the scope of Rule 26(b)(1)....

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

Federal Rule of Bankruptcy Procedure 7036 (Callaghan 1996).

■ A party may attempt to satisfy its burden to prove factual issues by requesting an admission from the opposing party. *In re Camp,* 59 F.3d 548, 554 (5th Cir.1995). If the opponent fails to consider the request, the factual issue is deemed admitted. *See, Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex. 1989). In the case at hand, HCS submitted a pretrial request for admissions to the Jacobs to which they failed to respond. Although there may be some reservations as to the Jacobs actual, subjective intent to knowingly and fraudulently take credit card advances without intent to repay them, the Jacobs have precluded the court from weighing such intent by their failure to adequately defend themselves in not responding to HCS's request for admissions. Further, by not communicating with their attorney for several months, not responding to numerous communications from the court and others concerning this action, and failing to appear at the discharge hearing, the Jacobs cannot avoid the potentially harsh consequences of the application of Rule 7036. The rule states that "any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Federal Rule of Bankruptcy Procedure 7036(b) (Callaghan 1996). Thus, through the request for admissions, HCS has established that: 1) the Jacobs obtained cash advances and purchases at a time when they

---

**1.** The Jacobs' attorney filed a Motion to Withdraw as Counsel on January 29, 1996, which was granted by the court on February 29, 1996.

were unable to pay their monthly payments on preexisting debts, and when their monthly take home pay was less than their monthly living expenses; 2) the Jacobs admit the accuracy of their statement of account; 3) the Jacobs were in default on other debts when they incurred the debts owed to HCS, thus putting themselves in a position of insolvency at the time of the charges and 4) the Jacobs had in excess of $45,000 of unsecured debt when they began to incur the debt owed to HCS.

However, facts which are undisputed or deemed admitted are not dispositive of HCS' contention that the Jacobs acted fraudulently. *In re Johnson,* No. 91–61069, 1993 WL 658967 (Bankr.N.D.Ind. Dec. 23, 1993) (Lindquist, C.J.). The court must make a further finding that given the undisputed facts, the Jacobs are guilty of obtaining cash advances under false pretenses, a false representation, or actual fraud.

2. *The Totality of the Circumstances vs. The Common Law Test or Subjective Theory for Fraud, as Justification for exception to Discharge.*

The basis for a Complaint for Exception to Discharge is 11 U.S.C. § 523 which states:

(a) A discharge under section 727, 1141, 1228[a], 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C.S. § 523(a)(2)(A) (Callaghan 1996).

■ To establish fraud under § 523(a)(2)(A), the creditor must prove that: (i) the debtor lied or acted in reckless disregard of the truth in obtaining money, property, services, or credit from the creditor; (ii) the creditor reasonably relied on the misrepresentation or untruth in extending money, property, services, or credit to the debtor, *i.e.,* the creditor had no reason to know or

suspect the truth; and (iii) the falsehood concerned a fact which was material to the transaction. *Mayer v. Spanel Int'l Ltd.,* 51 F.3d 670, 675–77 (7th Cir.1995), *reh'g, in banc, denied,* Apr. 24, 1995, *cert. denied,* —— U.S. ——, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985).

Recently, the Supreme Court attempted to further clarify § 523(a)(2)(A), by holding that the standard for excepting a debt from discharge under this section is not one of reasonable reliance, but one of justifiable reliance on the representation. *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In interpreting the meaning behind justifiable reliance, the court noted that instead of considering a community standard, a court would be required to focus on the plaintiff's own individual knowledge, "of which may fairly be charged against him from the facts within his observation in light of his individual case." *Id.*

There are numerous, and conflicting decisions interpreting § 523(a)(2)(A) in the context of credit card debts and other obligations arising out of varying forms of alleged fraud and deceit. *In re Leventhal,* 194 B.R. 26 (Bankr.S.D.N.Y.1996). However, several decisions have identified three predominant analytical approaches taken by the courts: 1) the Assumption of Risk theory; 2) the Implied Representation theory and 3) the Totality of the Circumstances theory. *In re McKinnon,* 192 B.R. 768, 771–73 (Bankr.N.D.Ala.1996). Recently, a fourth theory for determining the dischargeability of credit card debt under § 523(a)(2)(A) was devised based on the common law of fraud, and referred to as the Common Law Test, or the Subjective Test. *In re Murphy,* 190 B.R. 327 (Bankr. N.D.Ill.1995).

The assumption of risk doctrine holds that unless a credit card company has revoked the card, it assumes the risk that the debtors who do not have the ability to pay will use the card. Only those charges made after the card has been revoked are declared nondischargeable. *In re Dougherty,* 84 B.R. 653, 656 (Bankr. 9th Cir. BAP 1988). Since this

theory places the creditor in the difficult position of being responsible for all pre-revocation charges, to apply the theory allows the user of the credit card to obtain goods and services without any realistic prospect of having the wherewithal to pay. *In re Leventhal*, 194 B.R. 26, 28–29 (Bankr.S.D.N.Y. 1996).

The implied representation theory, followed by a majority of courts, holds that each time a debtor uses a credit card the debtor impliedly represents that he or she has the intention and, some but not all courts hold, the ability to repay the charges. *Id. citing In re Carrier*, 181 B.R. 742, 747 (Bankr. S.D.N.Y.1995); *In re Sharp*, 144 B.R. 372, 374 (Bankr.S.D.Ohio 1992); *In re Chech*, 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988); *In re Stewart*, 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988); *In re Buford*, 25 B.R. 477, 481 (Bankr. S.D.N.Y.1982). A recent view by a court that there can be no implied representation with regard to the debtor's ability to pay was shown in *In re Murphy*, 190 B.R. 327, 332 (Bankr.N.D.Ill.1995) ("One of the principal reasons people rely on credit is a present lack of ability to pay"). This view has been taken by other courts as well. *See In re Orndorff*, 162 B.R. 886, 888 (Bankr.N.D.Okla. 1994); *In re Blackburn*, 68 B.R. 870, 877 (Bankr.N.D.Ind.1987).

■ Since upon use of the credit card, the issuer's extension of credit constitutes both actual reliance and damages, which are the elements of representation, and the implied representation theory presupposes the existence of the debtor's representation of intent and ability to pay, it relieves the creditor of one of the burdens of proof for fraud. *In re McKinnon*, 192 B.R. 768, 775 (Bankr. N.D.Ala.1996). Thus, the implied representation theory finds false intent by the mere use of a credit card. However, implied fraud alone is not a basis for nondischargeability because actual fraud is required for a determination of nondischargeability. This court agrees with the decisions which conclude that it is neither factually nor legally appropriate to imply or infer a representation of ability to repay, although the debtor's ability or perceived ability to repay at the time the debt is incurred may be circumstantial evidence

bearing on the debtor's intent. *Leventhal*, at 30–31. *See also, In re Murphy*, 190 B.R. at 332 n. 6 (ability to pay is "one factor to be considered in determining whether the debtor intended to repay", although "[A]lone, financial inability to repay does not establish fraudulent intent").

As an alternative to the implied representation theory, courts have looked to the totality of the circumstances to prove that the debts were incurred with no intention of paying them, with the intent to be drawn from the circumstances. *In re O'Brien*, 176 B.R. 640 (Bankr.S.D.Fla.1995). This theory adopts the "reasonable man" test or an objective test to determine whether the debtor had the requisite intent to commit actual fraud. The Court in the case of *In re Williamson*, 181 B.R. 403 (Bankr.W.D.Mo.1995) enumerated twelve non-exclusive factors to be considered when determining if the debtor committed actual fraud with regard to pre-revocation charges:

1) The length of time between the charges made and the filing of the bankruptcy;

2) Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3) The number of charges made;

4) The amount of the charges;

5) The financial condition of the debtor at the time the charges were made;

6) Whether the charges were above the credit limit of the account;

7) Whether the debtor made multiple charges on the same day;

8) Whether or not the debtor was employed;

9) The debtor's financial prospects for employment;

10) Financial sophistication of the debtor;

11) Whether there was a sudden change in the debtor's buying habits; and

12) Whether the purchases were made for luxuries or necessities.

*Id.*

Other courts have cited these factors as well. *See In re Dougherty*, 84 B.R. 653, 657 (9th Cir. BAP 1988); *In re Carrier*, 181 B.R. 742, 747–48 (Bankr.S.D.N.Y.1995); *In re*

*Orndorff,* 162 B.R. 886, 888–89 (Bankr. N.D.Okla.1994); *In re Cox,* 182 B.R. 626, 633–34 (Bankr.D.Mass.1995); *In re Murphy,* 190 B.R. 327, 333–34 (Bankr.N.D.Ill.1995).

■ In their answer, the Jacobs have denied that they have incurred their debt by false pretenses, false representation or actual fraud. The issue then arises whether the case is to be determined by objective criteria on a reasonable man standard irrespective of the Jacobs' actual state of mind, or entirely on a subjective assessment of their credibility. The court's analysis in *In re Shanahan* suggests that:

> "the standard is neither entirely subjective nor purely objective, as the case of a reasonable man test: the actual state of mind of the defendant is determinative, but this is to be judged in light of the objective facts. The most devout and otherwise credible profession of good faith and intent to repay may be overcome by compelling objective evidence."

*In re Shanahan,* 151 B.R. 44, 47 (Bankr. W.D.N.Y.1993).

■ Beyond applying the factors from the totality of circumstances to the facts of this case this court agrees with the approach taken in *In re Murphy,* and requires determination of whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent. *Murphy,* 190 B.R. at 333–34. Thus, the common law test, or subjective theory requires the court to determine whether the Jacobs subjectively intended to deceive HCS at the time the charges were incurred by examining all of the facts. A review of the circumstances of the case at hand shows that HCS has established that: 1) the Jacobs obtained cash advances and purchases at a time when they were unable to pay their monthly payments on preexisting debts, and when their monthly take home pay was less than their monthly living expenses; 2) the Jacobs admit the accuracy of their statement of account; 3) the Jacobs were in default on other debts when they incurred the debts owed to HCS, thus putting themselves in a position of insolvency at the time of the charges and 4) the Jacobs had in excess of $45,000 of unsecured debt when they began to incur the debt owed to HCS. These facts demonstrate rather compellingly that this debt is nondischargeable, and are supported by the fact that the bankruptcy case was filed on November 22, 1994. In the six months prior to filing, the Jacobs took eight cash advances and made purchases for a total in excess of $6,000. Between May 7, 1994 and November 13, 1994, the Jacobs made only four payments totaling $381. The Jacobs' last cash advance was only twenty-six days before filing their bankruptcy petition. Clearly, the Jacobs knew or should have known that they could not possibly pay for the charges, and therefore perpetuated a fraud upon HCS. Accordingly, HCS's COMPLAINT FOR EXCEPTION FOR DISCHARGE is GRANTED. The court orders that the debt owed to HCS in the amount of $6,126.35 be excepted from the Jacobs' discharge. It is

SO ORDERED.