In re Linda G. WELCH, Debtor.

**CITICORP NATIONAL CREDIT & MORTGAGE SERVICES FOR CITIBANK, N.A., Plaintiff,**

v.

**Linda G. WELCH, Defendant.**

**No. 96 Civ. 6895(BDP).**

United States District Court, S.D. New York.

May 8, 1997.

Douglas Fisher, Solomon & Solomon, Albany, NY, for plaintiff.

Linda Welch, New York City, pro se.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

In an order dated July 24, 1996, Bankruptcy Judge Adlai S. Hardin, Jr. found that Linda Welch's debt of $5067.53 to Citicorp National Credit & Mortgage Services for Citibank, N.A. ("Citibank") did not fall into any of the exceptions to discharge set forth in 11 U.S.C. § 523(a), and dismissed Citibank's complaint with prejudice. Judge Hardin, pursuant to 11 U.S.C. § 523(d), also awarded Welch, who was proceeding *pro se,* $1000.00

in attorney's fees. Citibank appeals Judge Hardin's order.

## BACKGROUND

On November 1, 1995, Linda Welch consulted a real estate attorney, Andrew DePodwin, regarding the foreclosure proceedings that had been initiated for the sale of her home. At that meeting, DePodwin suggested that Welch file for bankruptcy and referred her to bankruptcy attorney, Eric Kurtzman. It was on that date that Welch was first presented with the possibility of filing for bankruptcy. Subsequently, on November 30, 1995, Welch filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. Among the unsecured creditors listed in.her filing was Citibank, with whom Welch had maintained a $8,400.00 credit line through an overdraft feature on her checking plus account ("the account").

Welch could access the credit line two ways. First, assuming that the cash balance in Welch's checking account was insufficient to cover checks tendered, funds would be transferred from the credit line to the account. Second, if there was no cash balance in the account, Welch could access the credit line from an automated teller machine ("ATM") and receive cash. Welch's October 17, 1996 bank statement, the last statement issued before Welch first entertained the possibility of filing for bankruptcy, indicated that Welch had borrowed a total of $6128.47 against her credit line.

The Bankruptcy Court found that the last check written by Welch against the account was dated November 6, 1995. Other checks written during the five day period between the date that Welch first consulted an attorney about the possibility of filing for bankruptcy, on November 1, 1995 and the date the last check was written included checks payable to (1) attorney Andrew DePodwin for $100.00; (2) Mobile Medic for $171.19; (3) USAB for $25.00; (4) USAB for another $25.00; and a check to cash for $200.00; and (5) bankruptcy attorney Eric Kurtzman for $100.00. The bankruptcy court further found that "within a.matter of a few weeks prior to the filing," Welch made approximately $4,400 in payments to Citibank.

Citibank commenced this adversary proceeding in February 1996 to establish that Welch's debt was non-dischargeable under both 11 U.S.C. § 523(a)(2)(C) and 11 U.S.C. § 523(a)(2)(A), which exclude from discharge debt secured through false pretenses, false representation, or fraud. Citibank's complaint alleged that at the time Welch accessed her Citibank credit line, she knew or should have known that she would be unable to repay Citibank the full outstanding indebtedness and, accordingly, that such cash advances were obtained under false pretenses.

The Bankruptcy Court conducted a trial on July 23, 1996. At trial, Citibank presented documentary evidence consisting of the debtor's bank statements for the months of August through December 1995 and copies of the checks written by the debtor during October and November 1995. Citibank offered no other documentary or testimonial evidence and did not seek to examine Welch. Welch, in turn, submitted and read from a written statement addressing the twelve factors referred to under the "totality of circumstances" analysis applicable under section 523(a)(2). *See In re Leventhal,* 194 B.R. 26, 29 (Bankr.S.D.N.Y.1996).

The Bankruptcy Court concluded that the documentary evidence submitted by Citibank failed to demonstrate even a colorable basis for any inference of false pretenses or fraud and thus no basis for asserting a claim of nondischargeability pursuant to 11 U.S.C. § 523(a). The Bankruptcy Court further found that even if the evidence were sufficient to support a colorable inference of false pretense or fraud under sections 523(a)(2)(A) or 523(a)(2)(C), such inferences were rebutted by Welch's statement and documentary exhibits that she presented at the hearing. Finally, the Bankruptcy Court, raising the issue *sua sponte* under 11 U.S.C. § 523(d), found that "the position of the creditor was not substantially justified" and awarded Welch $1,000 in attorney's fees and costs.

## DISCUSSION

The Bankruptcy Court's findings of facts "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.

R.Bankr.P. 8013; *see In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1388 (2d Cir. 1990). Legal determinations of the bankruptcy court are reviewed *de novo. In re Porges,* 44 F.3d 159, 162 (2d Cir.1995).

On appeal, Citibank argues that the Bankruptcy Court erred in finding the credit accessed by Welch from her overdraft credit checking line did not fall into one of the exceptions to discharge. Citibank sought to have Welch's debt to Citibank declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(C).

Section 523 (a)(2)(A) states that an individual debtor will remain liable for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). There is conflicting authority interpreting section 523(a)(2)(A) in the context of credit card debt and other financial transactions giving rise to claims of fraud and deceit. *Leventhal,* 194 B.R. at 28.

One of the threshold questions that has induced different judicial responses is whether a party proceeding under section 523(a)(2)(A) must establish the five elements of fraud, namely that (1) the debtor made representations (2) which she knew at the time were false (3) that were made with the intent to deceive (4) that were relied upon (5) in sustaining damages that were the proximate result of the representations, *In re Carrier,* 181 B.R. 742, 746 (Bankr.S.D.N.Y. 1995); *see AT & T Universal Card Services Corp. v. Akdogan,* 204 B.R. 90, 95 (Bankr. E.D.N.Y.1997), or whether "fraud" is merely one of three independent bases for discharge pursuant to section 523(a)(2)(A) and thus has a meaning broader than its traditional definition and does not include "reliance" or "representation." *See In re Leventhal,* 194 B.R. at 28. As stated *In re Shanahan,* 151 B.R. 44, 46 (Bankr.W.D.N.Y.1993),

some fraudulent acts—some tricks, deceptive devices or artifices—do not involve "reliance" upon a "representation." Some artifices or pretenses or devices are frauds even if there is no real "representation" (but merely an action or impetus) and no

real "reliance" (but merely an anticipated response or consequence).

Courts that have adopted the latter approach cite the disjunctive language in the section—"false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A)—as evidencing a statutory distinction among the three. *Leventhal,* 194 B.R. at 26. Our Court of Appeals has yet to address the issue.

The disparate readings of section 523(a)(2)(A) have resulted in varying analytical approaches to the dischargeability of credit card debt. Courts that have required proof of the five elements of fraud, have, as a general matter, adopted an "implied representation" approach which holds that each time a debtor uses a credit card the debtor impliedly represents that he or she has the intention and ability to pay the issuer for the charges incurred. *See, e.g., In re Carrier,* 181 B.R. at 747; *In re Sharp,* 144 B.R. 372, 374 (Bankr.S.D.Ohio 1992). Further, the creditor's extension of credit constitutes both actual reliance and damages. Thus, in most credit card cases, as in this one, the creditor easily demonstrates the elements of representation, actual reliance, and damage. *Carrier,* 181 B.R. at 747. Consequently, the creditor need only establish the second and third elements of fraud—that the debtor knew that the representation was false and that the representation was made with the intent to deceive.

Courts adopting the alternative reading have held that, insofar as misrepresentation is a traditional element of fraud and because Congress chose to construct "false representation" and "actual fraud" as different, independent bases for nondischargeability, "actual fraud" under section 523(a)(2)(A) must necessarily mean something other than "traditional fraud." See *Leventhal,* 194 B.R. at 28; *Shanahan,* 151 B.R. at 46. These courts, noting that the three bases for a finding of nondischargeability all focus on the conduct of the debtor and the debtor's state of mind, have looked to the "totality of the circumstances" and considered twelve or more factors in determining whether the defendant was guilty of false pretense, false representa-

tion, or fraud in obtaining credit. *See Leventhal,* 194 B.R. at 29. Those factors include:

1. The length of the time between the charges made and the filing of the bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits;

12. Whether the purchases were made for luxuries or necessities.

*See Leventhal,* 194 B.R. at 29; *see also Citibank F.S.B. v. Cox (In re Cox),* 150 B.R. 807 (Bankr.N.D.Fla.1992); *In re Orndorff,* 162 B.R. 886, 888 (Bankr.N.D.Okla.1994).

■■■■ Whether the Court employs the "implied representation" or the "totality of the circumstances" approach, in light of the "fresh start" objective of the Bankruptcy Code, exceptions to discharge must be strictly construed against the creditor and liberally in favor of the debtor. *See Leventhal,* 194 B.R. at 27; *Carrier,* 181 B.R. at 746; *In re Landrin,* 173 B.R. 307, 310 (Bankr.S.D.N.Y. 1994); *see also Bethpage Federal Credit Union v. Furio,* 77 F.3d 622, 624 (2d Cir.1996). Moreover, whichever approach is used, the proponent of a claim under section 523(a) must prove each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 290–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Furio,* 77 F.3d at 624.

■■■■ Under the implied representation approach, the fact that a debtor's credit card obligations may have exceeded her income at

the time the charges were incurred does not *per se* render a debt nondischargeable. *See Carrier*, 181 B.R. at 747. Creditors must prove that the "debtor knew full well that any professed intention to repay was false or was known by the debtor not to be well-grounded, and that he or she nonetheless deliberately used the card to obtain goods he or she knew were beyond his or her ability to pay." *Parkhurst*, 202 B.R. at 822 (citing *Shanahan*, 151 B.R. at 47). Indeed, courts employing the implied representation approach have looked to the "totality of the circumstances" factors in determining whether the requisite wrongful intent exists. *See Carrier*, 181 B.R. at 747–48; *Leventhal*, 194 B.R. at 29. Thus, under either approach, the creditor must establish that the debtor intended to deceive the creditor at the time the charges were incurred.

■ Applying the facts in this case to the nonexclusive list of factors which may lead to an inference of intent to deceive, *see Leventhal*, 194 B.R. at 29, I find that the Bankruptcy Court did not clearly err in finding that no such intent motivated Welch's debits against her credit line. After November 1, 1996, the date that Welch's real estate attorney first suggested the possibility that Welch file for bankruptcy, she wrote six checks ranging from $25.00 to $212.00 and totaling $808.19. At that time, Welch was within the $8,400.00 limit on her credit line. On October 4, 1996, Welch had made a payment of $1383.00 on account and on October 18, had made an additional payment to Citibank of $3042.00 on account. The minimum payments for each of those months was approximately $150.00. It did not appear, from the evidence presented to the Bankruptcy Court that the amount of credit accessed was inconsistent with the amounts drawn down in prior months. Citibank has presented no evidence that any of those checks were tendered to purchase luxury items, nor does it appear from a review of the payees named on the face of the checks, that any such purchases were made. Thus, application of the factors set forth in *Leventhal* point decidedly towards the debtor.

Citibank also appeals the Bankruptcy Court's finding under section 523(a)(2)(C),

although it fails to provide even a cursory explication of why it believes the Bankruptcy Court erred in finding that the section does not render Welch's debt nondischargeable. Section 523(a)(2)(C) delineates specific circumstances that will create the presumption of a false representation, false pretenses, or fraud. It states, in pertinent part, that for the purposes of section 523(a)(2)(A), "cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor" within sixty days of the debtor's filing the bankruptcy petition are presumed to be nondischargeable. An "open end credit plan" is defined as "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i); *see* 11 U.S.C. § 523(a)(2)(C).

■ Citibank argued, before the Bankruptcy Court, that the $5067.53 transfer in its entirety constituted a "cash advance" under section 523(a)(2)(C). I agree with the Bankruptcy Court's determination that Citibank, in order to satisfy its burden of proof, needed to establish the actual cash advances that Welch received, either through ATM withdrawals or by drafting checks for "cash." As this was not done, I see no reason to disturb the Bankruptcy Court's decision.

Finally, Citibank contends that the Bankruptcy Court acted beyond its authority in awarding the debtor attorney's fees pursuant to 11 U.S.C. § 523(d). Section 523(d) states:

if a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of and a reasonable attorney's fee for the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The Bankruptcy Court determined that Citibank's position in the adversary proceeding

was not substantially justified, finding, "based upon Citibank's own records, that there was no justification, no basis at all for alleging any form of fraud or bad faith on the part of this debtor." Noting that upon such a finding a plain reading of the section makes the award of attorney's fees and costs non-discretionary, the Bankruptcy Court awarded Welch $1,000.00.

██ Citibank argues that because Welch appeared *pro se*, she, by definition, is not entitled to attorney's fees. Although we find no occasion to disturb the Bankruptcy Court's conclusion that Citibank's position was not substantially justified, the fact remains that Welch, appearing *pro se*, is not an attorney and is therefore not eligible to collect fees payable to an attorney for legal work. *Cf. Kay v. Ehrler*, 499 U.S. 432, 435, 111 S.Ct. 1435, 1436, 113 L.Ed.2d 486 (1991) (noting that "a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees [under the Civil Rights Attorneys Fees Award Act, 42 U.S.C. § 1988]") (emphasis in original); *Securities & Exchange Commission v. Price Waterhouse*, 41 F.3d 805, 807 (2d Cir. 1994) (holding that a litigant who does not have an attorney is not entitled to reimbursement for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)). *But see Crooker v. United States Dept. of Treasury*, 634 F.2d 48, 49 (2d Cir.1980) (denying attorney's fee to *pro se* plaintiff under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), but indicating that an attorney's fee may be awarded to a *pro se* litigant who, in pursuing a FOIA suit, had to forgo the opportunity to earn her regular income).[1] Section 523(a)(2)(A) simply does not authorize the payment of attorneys fees to persons who are not attorneys.

## CONCLUSION

Based on the foregoing reasons, the Bankruptcy Court's determination that Welch's debt to Citibank did not fall into any of the exceptions to discharge set forth in 11 U.S.C. § 523(a) is affirmed, but the award of $1000.00 to Welch for attorney's fees is reversed.

**SO ORDERED:**

---

1. The Court notes that, when questioned about costs incurred in relation to the present adversary proceeding, Welch responded that she had incurred no such expenses.