**In re Lawrence E. WOLNIEWICZ, Mary E. Wolniewicz, Debtors.**

**Bankruptcy No. 97–11076 B.**

United States Bankruptcy Court, W.D. New York.

Aug. 25, 1998.

Carolyn S. Schwartz, United States Trustee, Christopher K. Reed, Assistant U.S. Trustee, Office of the U.S. Trustee, Buffalo, New York, Louis B. Toth Jr., Williamsville, New York, for Debtors.

CARL L. BUCKI, Bankruptcy Judge.

The Office of the United States Trustee (the "Trustee") has moved under section 707(b) of the Bankruptcy Code to dismiss the Chapter 7 petition of Lawrence and Mary Wolniewicz. Specifically, the Trustee contends that a substantial abuse of the Bankruptcy Code would arise if this Court were to allow the debtors to discharge consumer debts that are excessively disproportionate in amount to the income and circumstances of the debtor. Although this Court is disinclined to give general application to the Trustee's position, dismissal is nonetheless warranted under the peculiar facts that were established at the evidentiary hearing on this motion.

Lawrence and Mary Wolniewicz reside with three daughters in a partially remodeled home in Clarence, New York. Mary Wolniewicz is the family's sole source of income. A registered nurse, she worked two jobs at the time of the bankruptcy filing. From these positions, Mrs. Wolniewicz earned a gross income of $50,206.24 during 1996. Although he is of good health and sound mind, Lawrence Wolniewicz was last employed nearly eighteen years ago. Rather, he has devoted his energies to the care of his children, the remodeling of the home, and management of the family's finances.

The most striking feature of the debtors' financial picture is the profile of their unsecured debts. Altogether, Mr. and Mrs. Wolniewicz owe money on 59 credit cards having combined balances which totaled $336,328.15 as of the date of bankruptcy filing. Collectively, these obligations are nearly seven times greater than the entire annual gross income for the household unit. At the evidentiary hearing, Mr. Wolniewicz acknowledged that the average interest rate exceeded twenty percent per annum, and that at that rate, more than $67,000 of interest was accruing each year. Thus, interest alone was greater than the family's gross income.

The primary foci of the evidentiary hearing were possible explanations for the high credit card balances. Mr. Wolniewicz stated that he did not gamble, that he and his wife had never taken a vacation during their marriage, and that none of the family members had experienced significant illness. Except for a personal computer, the debtors have made no purchases of items that might be classified as luxury goods. Rather, their testimony indicated that the indebtedness derived from three sources. The first was the expense of home remodeling. With only limited assistance from professional contractors, Mr. Wolniewicz had undertaken personally to enlarge and modernize his home. He estimated that for building materials and supplies, he had made credit card purchases of more than $40,000. The second component of the indebtedness was an unknown number of small purchases for items ranging from groceries to clothing. Mr. Wolniewicz reckoned that as much as seventy percent of his credit card liability was the third segment, namely interest charges. Acknowledging that he had often used cash advances from one card to make minimum payments on another, he stated that he had long passed the point at which his cumulative monthly transactions could effect any reduction of principal.

Promptly after the bankruptcy filing, the Trustee appointed a case trustee, who then moved to compel the debtors to surrender certain non-exempt assets, namely a bank account with a balance of $2,839.32, cash in the amount of $75, bonds having a value of $257, and tools and building supplies valued at $3,469. Except for this last item, Lawrence and Mary Wolniewicz possess little to show for their large credit card liability. As reported on schedules filed with their bankruptcy petition, they own two modest automobiles, neither of which appears to have any equity beyond encumbrances and the exemptions that New York law allows. The remaining items of personal property have limited resale value. The debtors' most valuable asset is their home, which they purchased in 1975 for $22,500. Mr. Wolniewicz testified that over the past twenty years, he had "totally gutted the place." He stated that if the remodeling were finished, the property might have a value of as much as $300,000. At the present time, however, the repairs are only somewhat more than half complete. For this reason, the debtors have estimated that the home has a current value of only $62,500, which is subject to an outstanding mortgage in the amount of $44,917.79. If these numbers are correct, creditors would enjoy no opportunity to share the benefit of any equity beyond the available homestead exemption which, under New York law, amounts to $10,000 for each of the two owners.

The present motion implicates the authority of this Court to dismiss a case under section 707(b) of the Bankruptcy Code. This section reads as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

No one has questioned that the Trustee brought this motion without suggestion or request of any interested party. Lawrence and Mary Wolniewicz further concede that they are individuals whose debts are primarily consumer obligations. Thus, the only issue before this Court is whether their use of Chapter 7 would constitute a substantial abuse.

The Trustee acknowledges that most courts have traditionally applied an "ability to pay" standard as the starting point for finding the requisite level of substantial abuse. In his papers, the Assistant Trustee contends that "[t]he magnitude of the indebtedness in the instant case renders that standard ineffective and counterproductive." Instead, he would find that the "grossly irresponsible accumulation of credit card debt . . . negates any presumption of good faith," and constitutes evidence of substantial abuse. In response, the debtors' counsel ar-

gues that even if the Court were to look beyond his clients' ability to repay, substantial abuse would still require the application of a totality of the circumstances test, such as that described in *Green v. Staples*, 934 F.2d 568 (4th Cir.1991). He contends that the Wolniewiczes clearly lack an ability to pay any meaningful portion of their indebtedness, that they have no excessive income above expenses, that they made no purchases on the eve of their bankruptcy filing, that the amount of debt renders them ineligible for relief under Chapter 13, and that Chapter 11 would offer no opportunity to pay a significant portion of their debts. Although he acknowledges that his clients may have been naive and unreasonable, counsel insists that the Trustee has made no showing of bad faith and that no substantial abuse can arise from use of the Bankruptcy Code to resolve the problems of otherwise insurmountable debt.

The Wolniewiczes contend that the legislative history of section 707(b) dictates its application only to instances in which debtors retain an ability to repay some portion of their obligations. Such may indeed have been the primary purpose of the legislation. However, the language of the statute itself is not so limiting. Without ambiguity, Congress generally extended the application of section 707(b) to all cases in which "the granting of relief would be a substantial abuse of the provisions" of Chapter 7.

The bankruptcy code provides no definition of substantial abuse. Accordingly, the Court must interpret this phrase in ways that are consistent with its normal and customary meaning. Black's Law Dictionary defines abuse to include both the improper and the excessive use of a thing. BLACK'S LAW DICTIONARY 11 (6TH ed.1990). Thus, this phrase may refer both to the use of Chapter 7 in instances that may be seriously improper for any reason (ability to pay being but one example), and to circumstances in which reliance upon this Chapter is substantially excessive.

This Court rejects the Trustee's suggestion that an instance of substantial abuse occurs whenever debtors in Chapter 7 have accumulated consumer debts that are vastly in excess of their ability to repay. Such a circumstance, by itself, is not necessarily indicative of a substantial abuse of the bankruptcy process. Debtors may have incurred significant indebtedness by reason of addictions or frailties that are now the focus of personal reform. Although the underlying indebtedness may reflect an abuse of societal standards, the character of such misdeeds does not necessarily attach to a consequential proceeding in bankruptcy. Absent some showing of abusive action relative to the bankruptcy process, Chapter 7 may represent a legitimate and proper means to address the financial distress that is so often linked to other social difficulties. Even when personal problems provide no ready explanation for an unduly large amount of indebtedness, however, one may not presume the debtor's misuse of bankruptcy. Often in today's financial climate, lenders may themselves bear much of the responsibility for such outcomes.

At the initial hearing on the Trustee's motion, the Court announced that it would schedule an evidentiary hearing for a date subsequent to the deadline for complaints objecting to discharge or to determine the dischargeability of a particular obligation. Despite the shocking amount of unsecured debt, no creditor filed such a complaint within the applicable limits of time. Perhaps the creditors themselves recognized that their practices have contributed mightily to the disturbing state of the debtors' financial affairs. The Wolniewiczes owed the majority of their debt to creditors that issued multiple credit cards. Although repayment of the balance due on any particular card might have been affordable, several of these creditors allowed cumulative balances which would clearly challenge any reasonable expectation for repayment in full. According to their schedule of unsecured liabilities, Lawrence and Mary Wolniewicz owed to Chase Bank Card Services the combined sum of $50,244.24 on six credit cards, and to Citicorp Credit Services the combined sum of $52,931.30 on seven credit cards. Thus, the obligation to each of these creditors separately exceeded the family's annual gross income. In allowing the accumulation of

these unsecured balances, did the creditors give any consideration to the ability of this family to pay not any one particular card, but their total obligation? Mr. Wolniewicz testified that he and his wife still had not exceeded their credit limits when they stopped using their cards approximately four months prior to the bankruptcy filing. Indeed, he stated that even during that four month period, he received increases in his credit lines. Subsequent to the bankruptcy filing and despite the debtors' history of financial management, prospective lenders solicited Mr. and Mrs. Wolniewicz to accept new offers of credit.

As in the present instance, creditor conduct may contribute to the creation of an environment which allows or perhaps even induces the misuse of credit. For this reason, the mere magnitude of indebtedness does not necessarily establish substantial abuse. Nonetheless, section 707(b) speaks to the propriety of conduct of debtors, not to that of their creditors. Even if misguided, the lending practices of creditors cannot excuse conduct which rises to the level of substantial abuse. Without regard to any particular level of indebtedness, the issue of substantial abuse speaks to a debtor's purpose and intent in seeking the protection of the bankruptcy code.

A fundamental purpose of bankruptcy law is to afford to qualified debtors the opportunity of a fresh start. Bankruptcy, therefore, represents a solution to problems that result from either misfortune or mistake. When the use of bankruptcy becomes part of the problem, however, that use loses its legitimacy and becomes a vehicle for substantial abuse. The key distinction is whether a debtor uses bankruptcy to solve unintended difficulties, or as part of a broader scheme or device to avoid personal responsibility for one's conduct.

Every human is capable of making a mistake. Gambling and substance abuse are examples of personal weaknesses that can have enormously adverse consequences for one's financial well-being. Some individuals are prone to over-spending. Others make investment decisions which, in hindsight, are ill-advised. Such faults and failures may cause the creation of substantial indebtedness. So long as insolvency is an unintended result of the debtor's conduct, bankruptcy offers an opportunity to overcome the problems of one's past. In this context, the bankruptcy process contemplates that astute counsel may provide pre-bankruptcy planning, to assist debtors to maximize the benefits of the Bankruptcy Code. But when bankruptcy represents a mere step in a process that the debtor has designed to avoid obligations, the filing of a bankruptcy petition loses the character of a solution, and instead becomes part of the underlying problem. In such circumstances, the use of bankruptcy develops into an exercise of abuse.

In instances where ability to pay is not at issue, the test for abuse is whether the debtors are using bankruptcy as part of a scheme that they wish to employ primarily to avoid obligations that they never intended to satisfy. In other words, bankruptcy is available to overcome one's mistakes, but not to contribute to them. Many are the debtors who should have known that they were incurring debts that they would never be able to pay. The failure to appreciate this consequence is the essence of their problem, one which the Bankruptcy Code is designed to address. In contrast, instances of abuse arise when debtors incur debt with an actual intent never to repay. Substantiality requires further that this intent pervade the finances of the debtors. For them, bankruptcy must represent the final step of a deliberate process to avoid any meaningful measure of financial responsibility.

The extraordinary facts of the present case demonstrate that the Wolniewiczes have crossed the line of legitimacy, in that they seek to use bankruptcy primarily as the last act of a scheme to avoid obligations that they never truly intended to pay. In their testimony, Mr. and Mrs. Wolniewicz presented themselves to be people of great savvy and intelligence. Mary Wolniewicz testified that her husband kept excellent financial records. Confirming the care and attention that he gave to the family's financial affairs, Lawrence Wolniewicz stated that he devoted at least one day per week to management and payment of bills. Such diligence helps to

explain his ability to remain current with each of the fifty-nine credit cards. Using a combination of income and cash advances, Mr. Wolniewicz managed to placate the short term requirements of each of his creditors over a considerable period of time.

As one might expect, neither debtor acknowledged an intent to avoid their financial obligations. Rather, it is the totality of the facts and circumstances which evidence such a scheme. Although the gross amount of indebtedness does not suffice by itself to establish substantial abuse, the Court's suspicion is initially raised by the fact that credit card obligations exceed by more than six times the regular family income. Rather than to accept part time employment, Lawrence Wolniewicz chose to spend an equivalent amount of time on manipulation of his credit card balances. Thus, he borrowed from one account to pay another, all in ways that preserved the family's good credit standing. No special or cataclysmic events explain the magnitude of the indebtedness. Meanwhile, the Wolniewiczes had delayed completion of the remodeling of their home, with the effect of depressing its potential value upon liquidation in bankruptcy. Their conduct, therefore, belies their statements of an intention to complete the remodeling and to use the resulting equity, through means of either a refinancing or sale, to pay most or all of their unsecured debt. Rather, they chose to file their petition at a time when the house was materially unfinished. As a consequence, the Wolniewiczes are able to now claim the existence of minimal equity in excess of homestead exemptions.

This Court finds that for Lawrence and Mary Wolniewicz, finances became a game rather than an honest attempt to address obligations. In this context, bankruptcy was just the final step in their efforts to avoid the ultimate repayment of debts. Although the credit industry may be fully to blame for an environment which allows irresponsible consumer conduct, the debtors must also bear responsibility for having seized the opportunities that were thereby presented. The present proceeding is not one initiated by creditors, such as might allow a possible defense based upon contributory misconduct.

Rather, motions under section 707(b) are the exclusive reserve of the Trustee and this Court, whose duties are to preserve the integrity of the bankruptcy process. The debtors' actions demonstrate the rejection of any accountability for their legitimate obligations. Confirming the substantiality of this abuse is the totality of the debtors' commitment to gamesmanship.

For the reasons set forth above, this Court grants the Trustee's motion to dismiss the petition of Lawrence and Mary Wolniewicz. The strictures of section 707(b) apply only to cases filed under Chapter 7 of the Bankruptcy Code. If the debtors wish to resolve their liabilities through means of an organized plan, they may convert this matter into a proceeding under Chapter 11. To allow for that possibility, this Order of Dismissal shall be effective as of the tenth day following its entry, and then only if the debtors fail to complete the conversion of their case.

So Ordered.