**In re Maria HAYES, Debtor.**

**No. 00 B 12229(ASH).**

United States Bankruptcy Court, S.D. New York.

Nov. 27, 2001.

Michael H. Schwartz & Associates, P.C., by Michael H. Schwartz, White Plains, NY, for Debtor.

Mark S. Tulis, White Plains, NY, Chapter 7 Trustee.

### MEMORANDUM DECISION

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

The debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 19, 2000. It appears from the docket sheet that the Section 341(a) meeting was held on July 6, 2000 and that the deadline to object to discharge or dischargeability was September 5, 2000. On July 7, 2000 the Chapter 7 Trustee certified that the estate had been fully administered, that it was a "no asset" estate and requested that the debtor be issued a discharge. An order of discharge and final decree was entered on September 11 and the case was closed on September 13, 2000.

The debtor's schedules annexed to the petition listed assets consisting of personal property valued at $1,450 and liabilities consisting of unsecured, non-priority debt in the amount of $63,644.41 owing to thirteen creditors, all credit card debt. The debtor's Schedule 1 listed $1,243.25 total monthly income and $1,474.30 total current monthly expenditures. Schedule 1 did not disclose debtor's husband's income.

By notice of motion dated October 23, 2000 the debtor moved to reopen her case to add five additional creditors holding credit card claims against the debtor in the aggregate amount of $33,409.05. The following are the creditors which the debtor seeks to add to her schedule in order that the obligations to them may be discharged:

Citibank South Dakota
P.O. Box 220745
Charlotte, NC 28222

First USA Bank
Attn: Bankruptcy Support
P.O. Box 149265
Austin, TX 78714–9265

GM Card
P.O. Box 80082
Sallinas, CA 93912–0082

Household Credit Services
P.O. Box 17051
Baltimore, MD 21297–1051

Wachovia
P.O. Box 15515
Wilmington, DE 19886–5515

In an affidavit attached to the motion, the debtor stated:

3. When I filed my Chapter 7 case with the court, I did not include GM Card, Wachovia, Citibank S.D., Household Bank, and First USA Bank as a creditors [sic] because I did not understand that creditors who were being handled by a credit counseling agency needed to be included in the Bankruptcy. I have attached a copy of the Credit Counseling Statement.[1]

---

1. The Credit Counseling Statement identifies the agency as "Family Financial Education Foundation is a 501(c)(3) Non-profit Organi-

zation, T.I.N. 83–0320495, a third party administrator and a member of the Association of Independent Consumer Credit Counseling

At the hearing on the motion the debtor stated that she was advised by the credit counseling agency that she did not need to include these five creditors in her schedule of liabilities attached to her petition. The debtor also volunteered at the hearing that she had been sending all of her available funds to her needy relatives in her country of origin in Latin America.

The debtor's failure to disclose fully one-third of her $97,000 of credit card debt in her bankruptcy schedules annexed to her petition is inexcusable. The debtor obviously did not overlook these five creditors, in respect of whose claims she had sought credit counseling assistance. Her explanation that she was advised that she did not need to include these creditors in her schedules is simply not worthy of belief. The omission of these five additional credit card debts is plainly material to this debtor's overall financial condition, especially in view of the stark contrast between her income and expenditures, on the one hand, and the over $97,000 of consumer debt on the other.

Recognizing that credit card companies are notoriously somnolent in consumer bankruptcy cases, nevertheless it cannot be said that the debtor's failure to disclose her true level of indebtedness would not have been material to the decision of one or more creditors with respect to their participation in this case.

Several provisions of the Bankruptcy Code are relevant in the circumstances now confronting the Court. Section 727(d) provides in relevant part:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

Under Section 105(a), the Court is empowered to act sua sponte to "... issue any order process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor....

 Two essential elements for a finding of "fraud of the debtor" under Section 727(d)(1) are present here. One is the debtor's conscious and intentional misrepresentation of facts in connection with her bankruptcy petition and schedules. The other element is materiality of the false representation. *See Colonial National Bank USA v. Leventhal (In re Leventhal)*, 194 B.R. 26, 28–31 (Bankr. S.D.N.Y.1996). The debtor's failure to disclose one-third of her credit card indebtedness, and her failure thereby to give notice of her bankruptcy to these particular creditors, was conscious and intentional. Indeed, these five creditors evidently were of the greatest concern to this debtor by her testimony and evidenced by the fact that only these five were the subject of her resort to the credit counseling agency.

Agencies (AICCCA) and the Rocky Mountain Better Business Bureau, and is bonded for

$250K through Lumbermens Mutual Casualty Policy # 3F 901 524–02."

Her stated reason for not disclosing these five creditors in her schedules—that she was advised by the credit counseling agency that she did not need to include them in her bankruptcy—is unsupported by any evidence from the person who purportedly so advised the debtor and is incredible on its face. Nor can there be any doubt of the materiality of the debtor's failure to disclose, thereby misrepresenting the extent of her consumer debt by more than 50% of the indebtedness that was disclosed. The misrepresentation deprived the creditors who did get notice of the debtor's bankruptcy and the Chapter 7 Trustee of information which might have affected their participation in the debtor's bankruptcy, and it deprived the five creditors omitted from the schedules of any opportunity to attend the Section 341(a) meeting or otherwise exercise their rights in a timely fashion before the debtor was granted a discharge.[2]

Since the Bankruptcy Code does not define the term "substantial abuse," courts have developed a variety of approaches to consider the issue: (1) the "Per Se Rule", (2) a "Totality of the Circumstances Test" and (3) a "Hybrid Approach". *In re Carlton*, 211 B.R. 468, 476 (Bankr.W.D.N.Y. 1997), *aff'd, Kornfield v. Schwartz*, 214 B.R. 705 (W.D.N.Y.1997), *aff'd, In re Kornfield*, 164 F.3d 778 (2nd Cir.1999).

The "Per Se Rule" holds that a debtor's ability to pay his debts, standing alone, warrants dismissal under section 707(b). *See United States v. Harris*, 960 F.2d 74, 77 (8th Cir.1992). The "Totality of the Circumstances Test" permits the court to make a case-by-case assessment of factors including whether the debtor's petition was filed because of sudden illness, calamity, disability or unemployment, and whether the debtor's proposed family budget is excessive or unreasonable. *See In re Green*, 934 F.2d 568, 570–73 (4th Cir.1991). The "Hybrid Approach" first analyzes whether the debtor has the ability to repay his creditors out of future earnings and then considers any mitigating factors which may rebut the resulting presumption of substantial abuse. *In re Krohn*, 886 F.2d 123, 126–28 (6th Cir.1989). While the primary factor in all of the above-described tests is "the ability to pay creditors,"[3] the degree of emphasis to be placed on this factor is what divides them. Although the Second Circuit adopts some form of the totality of circumstances test, it notes that there is no need to "spell out in greater detail the precise content of the proper totality of circumstances test in this circuit." *In re Kornfield*, 164 F.3d 778, 784 (2nd Cir.1999). While some courts explain that the legislative history of section 707(b) supports strict application only to cases in which debtors possess an ability to repay

---

**2.** A requirement for revocation of discharge under Section 727(d)(1) is that the party requesting revocation "did not know of such fraud until after the granting of such discharge." Accordingly, where, as here, the fraud concerns a material omission, elements of fraud such as reasonable reliance, harm or detriment to creditors and a causal relation between the omission and the creditor's detriment are presumed from a finding of materiality. *See State Bank of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 604 (Bankr.N.D.Ill. 1996); *Donovan v. LaPorta (In re LaPorta)*, 26 B.R. 687, 692 (Bankr.N.D.Ill.1982); *Wendel v. Daugherty (In re Daugherty)*, 14 B.R. 1

(Bankr.S.D.Fla.1981) (intentional omission of assets and grounds which would have barred discharge justify revocation of the discharge).

**3.** In fact the pertinent legislative history notes that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse," clearly emphasizing the debtor's ability to pay creditors. (S Rep No. 65, 98th Cong, 1st Sess 43 (1983)) (Senate Report accompanying § 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankr Amend Act of 1984).

some/all of their obligations, *see, e.g. United States v. Harris,* 960 F.2d 74, other courts (discussed below) have expanded upon the primary purpose of the legislation. In applying the "totality of the circumstances test" one court noted that "Congress generally extended the application of section 707(b) to all cases in which 'the granting of relief would be a substantial abuse of the provisions' of Chapter 7." *In re Wolniewicz,* 224 B.R. 302, 305 (Bankr.W.D.N.Y.1998). In defining substantial abuse the court stated "when bankruptcy represents a mere step in a process that the debtor has designed to avoid obligations, the filing of a bankruptcy petition loses the character of a solution, and instead becomes part of the underlying problem. In such circumstances, the use of bankruptcy develops into an exercise of abuse." *Id.,* 224 B.R. at 306; *see also Matter of Bruno,* 68 B.R. 101 (Bankr.W.D.Mo.1986) (substantial abuse found in case where husband sought to discharge funeral bills incurred as a result of murdering his wife).

To summarize the facts presented to the Court:

- the debtor has total unsecured debts in the amount of $97,053.46 which represents approximately 6½ times her gross annual income;
- the debtor sends "all of her extra money" to needy relatives in Latin America instead of attempting to reduce her debt;
- the debtor's monthly expenses exceed her monthly income by $231.05;
- the debtor pays $600.00 of monthly rent but does not indicate whether that figure represents full or partial payment of the total rent due; and
- by her own account the debtor intentionally (although claiming that she had been advised to do so) withheld the listing of five creditors which she presently seeks to add to her bankruptcy schedules, depriving previously listed creditors the opportunity to view the case in its proper context and omitted creditors the chance to participate in the case from its inception.

These facts may be grounds to reopen the case, vacate the debtor's discharge and dismiss the debtor's case under Section 707(b) under an expansive view of the statute. Nevertheless, it is my conclusion that the interests of justice and the objectives of the Bankruptcy Code will be served by preserving for the debtor the opportunity to obtain a discharge under Section 727(a), while at the same time granting to all of the debtor's creditors, and her Chapter 7 Trustee, the opportunity to assert their rights in this Chapter 7 case with full knowledge of the facts which the debtor withheld initially. To achieve these objectives, the Court will reopen the debtor's case under Section 350, revoke the debtor's discharge under Section 727(d)(1) and order the Trustee to schedule and the debtor to attend a further meeting of creditors under Section 341(a). If no adversary proceeding to deny discharge under Section 727(a) is commenced within 60 days after the conclusion of the Section 341(a) meeting, the Clerk of the Court shall enter the debtor's discharge within two weeks thereafter, except as to the indebtedness owing to any creditor who has timely commenced an adversary proceeding to deny dischargeability under Section 523(a). The Clerk shall enter an order closing the case promptly after issuing the debtor's discharge, or after the conclusion of any adversary proceeding brought under Section 523(a) or Section 727(a).

An order consistent with this decision will be entered forthwith.